HUNT *v.* MANN.*
DULANEY *v.* BROWN.

(Division A. Oct. 6, 1924.)

[101 So. 369. Nos. 24392, 24393.]

1. ELECTIONS. *Unless statute expressly declares particular act essential to validity of election, statute treated as directory, and not mandatory; controlling inquiry in determining how far irregularities in party nominations affect general election stated.*
In determining how far irregularities in political party nominations for office will affect the result of the general election, the controlling inquiry is whether or not the irregularity complained of has prevented a full, fair, and free expression of the public will, and unless the statute which has been violated in making the nomination expressly declares that the particular act in question is essential to the validity of the election, or that its omission shall render the election void, the statute will be treated as directory, and not mandatory, provided, such act of irregularity is not calculated to affect the integrity of the election.

2. ELECTIONS. *Candidate for board of supervisors procuring name on ballot, on petition of insufficient number of electors, held not material irregularity.*

Section 4159, Code of 1906 (section 6793, Hemingway's Code), contains the provision: "The commissioner shall also have printed on the ballot the name of any qualified elector who has been requested to be a candidate for any office, by a written petition signed by at least fifteen qualified electors, for any beat or municipal office in a town or village of less than three hundred inhabitants, or fifty qualified electors for any other office." A candidate for a member of the board of supervisors, who was declared so elected in the general election, procured his name to be printed on the official ballot, on the petition of more than fifteen qualified electors, but less than fifty. *Held,* in a contest begun after the general election, that, conceding, though not deciding at least fifty names of qualified electors should have appeared on said petition, nevertheless, since there was a fair and free expression of the public will in said general election, the irregularity could not be complained of in such contest.

*Headnotes 1. Elections, 20 C. J., section 150 (1926 Anno.); 2. Elections, 20 C. J., section 107.

APPEAL from circuit court of Issaquena county.
HON. E. L. BRIEN, Judge.

Election contests by David Hunt against L. E. Mann, and by L. C. Dulaney against W. H. Brown. From a judgment in each case for defendant, plaintiffs appeal. Affirmed.

*Thos. C. Catchings,* for appellants.

I. In accordance with section 4186, Code of 1906 (sec. 6793, Hemingway's Code), the appellant within twenty days after the election filed his petition in the office of the clerk of the circuit court of the county, for the purpose of contesting the election of L. E. Mann, defendant, setting forth the grounds upon which the election was contested. To this petition the defendant, L. E. Mann, filed a demurrer.

The contest was based upon the ground that the office of member of the board of supervisors is a county office, and that the name of the defendant, L. E. Mann, could not be placed upon the official ballot by petition, under section 4159, Code of 1906 (sec. 6793, Hemingway's Code), unless upon the request of not less than fifty qualified electors. The sole question to be decided by this court is whether the office of member of the board of supervisors is a county office or a beat office.

As to the nature of the office, attention is invited to section 170 of the Mississippi Constitution. Manifestly the sole purpose of this section of the Constitution was to provide for the establishment of a board of supervisors of the several counties. The Constitution conferred no jurisdiction whatever upon the individual members of the board of supervisors. The jurisdiction conferred by that section is vested in the board of supervisors itself and that jurisdiction was to be exercised by a majority of them. It is important to take note, also, of the provision in that section of the constitution that the clerk of the chancery court of each county shall be clerk of the board of supervisors. He is clearly a county officer and has important functions to perform with regard to the affairs of the county. It would be singular, if members of the board of supervisors are not county officers, that they should have imposed upon them as their clerk one who is undoubtedly a county officer.

Aside from this provision of the Constitution, an examination of the Code will show that the legislature, in the exercise of its authority, treated members of the boards of supervisors as county officers and conferred no jurisdiction whatever upon them as individuals. See section 3574, Code of 1906, with reference to paupers.

By section 4434 of the Code of 1906, when any bridge or levee has been so washed away or damaged by floods that it cannot be repaired by the road hands in two days, it is the duty of the member of the board of supervisors

of the district in which it is situated, upon notice to him by the road overseer, to contract with a responsible party to restore the bridge or levee, or repair the damage, and to inspect the same when completed and report to the next meeting of the board, and it is the duty of the board to pay for the work, if it has been done satisfactorily. It will be noted that this is county work, inasmuch as the board of supervisors have general jurisdiction over all the roads in the county, and are not only authorized but required to work and maintain them and provide proper bridges. By section 4447, each member of the board acts as the agent of the whole board in making the inspection of roads and bridges, and he is required to report to the board what he finds, so that the board itself can take such action as may be deemed proper and necessary. By section 4467, the supervisor of each district is to have general supervision over the public highways of his district, for which service he is to have a salary of twenty dollars per annum, if a road commissioner is employed, and otherwise fifty dollars per annum. By section 304 of the Code of 1906, members of the board are made conservators of the peace within their respective counties. As conservators of the peace they represent the state and their jurisdiction is co-extensive with the limits of the county.

The question as to the nature of the office of member of the board of supervisors was considered by the supreme court of the United States in the case of *Sheboygan County* v. *Parker*, 3 Wallace 90. The finding of the supreme court in this case is in strict accord with rulings of a number of state courts, of which we will give some illustrations. *Board of Commissioners of Newton County* v. *Wild, et al.*, 76 N. E. (Ind.) 256; *Rogers* v. *Slonaker* (Kan.), 4 Pac. 139; *State, ex rel., Pendergast* v. *Fulton* (Wash.), 79 Pac. 779; *Chapin* v. *Willcox, Auditor* (Cal.), 46 Pac. 457; *Miller* v. *Smith* (Idaho), 61 Pac. 826; *Bruner* v. *Madison County*, 111 Ill. 11; *Shanklin* v. *Madison*

*County,* 21 Ohio St. 575; *State* v. *Anson* (Wis.), 112 N. W. 479; *State* v. *Rexford* (S. Dakota), 119 N. W. 217; 23 Am. & Eng. Ency. 328; *Levy Court* v. *Coroner,* 2 Wall, 507.

The case of *McKenzie* v. *Boykin,* 111 Miss. 256, may be referred to as holding that a member of the board of supervisors is not a county officer. The case does not so decide, for no question was presented to the court involving decision as to whether a supervisor is a county officer or a district officer. That was a contest over the office of supervisor. The question before the court, and the only question, is stated in the opinion as follows: "The question to be determined in this case is whether or not an elector in a general election can vote for any person for office other than one whose name is printed on the official ballot, by writing thereon the name of his choice for the office, except in the case of the death of a candidate. It is urged that, unless qualified electors are permitted to write the name of their choice on the official ballot and put the X mark opposite same to indicate their choice, the provisions of section 250 of the Constitution of 1890 would be violated. Section 250 is as follows: 'All qualified electors and no others, shall be eligible to office, except as otherwise provided in this Constitution.'" The court held that this section of the Code did not violate the section of the Constitution above set out. The court, however, went outside of the record and outside of the only issue presented to it, according to its own statement as above indicated, and said: "The law provides a simple expedient whereby the names of candidates who are not party nominees may be placed upon the ticket in district offices by requiring a petition to be signed in the case of election of beat officers by only fifteen qualified electors." This statement is absolutely *obiter dictum.*

II.  WHO ARE "BEAT" OFFICERS. The only beat officers are justices of the peace and constables. Section 171 of

the Constitution; Section 829 of the Code of 1906; *Riley* v. *James,* 73 Miss. 1, clearly indicates that justices of the peace and constables are limited by the Constitution itself to the district for which they are elected. This clearly makes them district officers. See, also, *State* v. *Tate,* 77 Miss. 469.

It is respectfully submitted that a member of the board of supervisors is necessarily a county officer, inasmuch as all the functions performed by him are performed for the use and benefit of the whole county, and are performed by him simply as a component part of the board of supervisors of the county. He has no functions to perform whatever peculiar to the district from which he is chosen. If he is a county officer, as common sense and the authorities above referred to clearly show, then the petition, in order to entitle the defendant, L. E. Mann, to have his name printed upon the official ballot, must have been signed by fifty qualified electors. Inasmuch as the petition was signed by less than fifty qualified electors, there was no authority whatever for placing his name upon the official ballot, and the act of the election commissioner in so doing was null and void, and votes could not lawfully have been received and counted for him.

*Henry, Canizaro & Henry,* for appellee.

The court's attention is directed to the fact that it is not claimed in appellant's declarations that the election was not fairly held, and an honest count had, which resulted in the majority of qualified electors casting their ballots for the appellee. The complaint, as set out in appellant's declaration, is as to the manner by which appellee's (the successful candidate's) name was placed by the commissioners of election on the ballot voted by the electors, so one of the most important questions in the case is the construction to be placed on section 4159, Code of

1906, section 6793, Hemingway's Code. There is, however, another important question raised by appellee, and that is, if, for argument's sake alone, we concede that section 4159 is to be construed as contended for by the appellant, he, having failed to raise objection to appellee's name being placed on the ticket before the commissioners of election in a direct proceeding, or before some proper tribunal, in due time, his failure in not making his objection, showed his willingness to take a chance before the people at the polls, and, having lost, we contend that he is now estopped from attacking the method, manner and procedure adopted through which appellee was chosen, no charge of fraud being made or alleged in appellant's declaration.

It is not our purpose to dispute the appellant's position that a member of the board of supervisors acts as a county officer when acting along with the other four members comprising the board of supervisors. The question here is, how, and by whom is he to be chosen or selected, and how must he proceed to get his name on the ballot? From sections 170, 176 of the Constitution, the two prerequisites involved which are factors in the case are: First, That each county must be divided into five districts; and, second, that a resident freeholder of each district shall be selected. The word "selected" is synonymous with the words "elected" or "chosen," see 7 Words and Phrases, page 6401. It is therefore manifest that the word "selected" means must be chosen or elected from each supervisor district, and when in this connection we read sections 170 and 176 together it becomes certain that a person who desires to run for such office must be a resident freeholder in the district *from which he is chosen.* He is chosen a supervisor for a certain, particular, designated district, and must be elected by the qualified electors of that district.

Let us determine what the legislature meant by section 6793, Hemingway's Code: "The commissioner shall also

have printed on the ballot the name of any qualified elector who has been requested to be a candidate for any office by a written petition signed by at least fifteen qualified electors for any beat of fifty qualified electors for any other office." It seems to us that, in view of the constitutional provision heretofore referred to, the legislature (dealing, as it was, with the election laws), undoubtedly had in mind the difference of requirement of qualification of officers who were to be elected from a beat as distinguished from officers to be elected from the county at large. In other words, a candidate for membership of the board of supervisors is, in so far as to the manner in which he is chosen, a beat officer, as is provided by sections 170 and 176 of the Constitution. Neither the third nor the fifth district has within the limits thereof fifty qualified electors. Any requirement of law which at once renders the law impotent and nullifies it becomes unconstitutional. If fifty names were required to request a supervisor to run in a district that had not fifty electors, the result would be that there could be no candidate placed on the ballot by the commissioners of election upon the petition of the people of that district. Such a law would, of course, be unconstitutional in that it would deprive the electors of the right of suffrage, and would be an abridgement of the privileges of a citizen of this state and a violation of the Fourteenth Amendment to the Constitution of the United States. Section 241, Constitution of the state of Mississippi; *McKenzie* v. *Boykin*, 111 Miss. 261, 20 C. J., p. 111.

To give this court an additional illustration: It may be argued that a member of the legislature is a state officer because he participates in the enactment of laws for the entire state. But we again reiterate that the jurisdiction or, better still, the duties of the officer does not control nor determine the question of *how* the officer is elected nor *how* he got his name on the ticket. A legislator of Issaquena county represents his individual coun-

ty, but his duties are for the state of Mississippi, he functions as a state officer. He is elected from his county, but while limited to his county for nomination and election, after election he becomes a state officer. So it is with a member of the board of supervisors, for while he is elected from one particular district in the county and he represents that particular district or beat (synonymous words), he is a beat officer in so far as his nomination and election goes; although he, with his contemporaries (other four members), pass on matters pertaining to the county at large.

II. This Honorable Court has gone to great length in upholding the declared wish and will of the people when it is evidenced by the overwhelming expression of their will as shown and declared in the result of the ballot held to determine their preference as to officers. *State* v. *Brumell,* 131 Miss. 198, 11 Ann. Cas. 1135; *Hagin* v. *Bullock,* 92 Ark. 67, 19 Ann. Cas. 822; *Territory* v. *Kanealii,* 17 Hawaii, 7 Ann. Cas. 837; 9 R. C. L. p. 1172, sec. 161.

III. The court will observe that nowhere in the petition or declaration of appellant is any fraud charged. The election, we take it, was therefore fairly and honestly held and the result was the free expression of the electorate showing their preference for appellee. That being conceded, we desire to urge our seventh ground of demurrer. *Shines* v. *Hamilton,* 87 Miss. 389.

IV. It cannot be denied by appellant that ample and immediate relief could have been afforded him by recourse to the law if he had so chosen by proper request to the court for estopping the commissioners of election from printing the name of appellee upon the ticket to be used at the polls. The law requires that tickets be used at an election, and the names to be printed on the ticket must be determined by the commissioners of election fif-

teen days before the election, thereby giving to anyone who desires to contest regarding the ticket in any wise fifteen days in which to do so. The appellant failed to question the ticket or the right of the commissioners of election to prepare the ticket or in any other wise. Appellee therefore now claims that appellant is estopped from raising the question of the names upon the ticket at this time, or any other time after the election was had and the ballots prepared by the commissioners of election were used in the election. The court will observe that we differentiate between the question of the right of office and the question of the correctness of the acts of the commissioners of election in placing the name of the appellee on the ticket which was used at the election. If the tickets used at the election were improper appellant should have exercised his right to correct the wrong done him by the commissioners of election before the election was held. If he failed to so use his right in that regard then this court will not, in our opinion, uphold appellant in his effort to defeat the will of the majority, by and through which a fraud would be practiced on the electors wherein they were given the right to utilize a ticket with appellee's name thereon, but the election by this was nullified by the action of the commissioners of election by placing appellee's name on the ticket. *Brewer* v. *Abby,* 82 Miss. 559; 9 Ruling Case Law, p. 1173; *Allen* v. *Glynn,* 17 Colo. 338, 29 Pac. 670, 31 A. S. E. 304, 15 L. R. A. 743; *Bowers* v. *Smity,* 111 Mo. 45, 20 S. W. 101, 33 A. S. R. 491, 16 L. R. A. 754; *Martin* v. *McGarr,* 27 Okla. 653, 117 Pac. 323, L. R. A. (N. S.) 1007.

It will be noted and observed by the court that the petition herein sets out the fact that the appellee received the majority of votes cast at the election. The commissioners of election declared the appellee duly elected to the said office, and so certified that fact and their findings to the secretary of the state, and the commission which appellee now holds was issued to him in due time by the

said secretary of state, as required by law. The appellee having received a certificate and having been duly commissioned, this fact constitutes conclusive evidence of title to the office in the appellee. 9 R. C. L., p. 1113, sec. 116. The burden of overcoming the *prima-facie* presumption of title to office from the certificate of the commissioners of election is upon the appellant. 9 R. C. L., p. 1162, sec. 152.

The proper result was reached, the will of the qualified electors voting at the election by an overwhelming majority expressed their preference for appellee at a fair and honest election with no taint of fraud upon the part of anyone, and we respectfully ask an affirmance of this case.

*Thos. C. Catchings,* for appellants in response to questions by the court.

20 C. J., p. 111, contains this language, which it is believed clearly states the true doctrine of law, to-wit: "(b) Number of Signers. The requirement as to the number of petitioners is mandatory. The determination of what shall be a reasonable number of signers for an independent nomination is primarily a matter for the legislature and not for the courts." There is no room for disputing this proposition thus expressed. By section 4158, Code of 1906, it is made the duty of one of the election commissioners, designated for that purpose in his commission by the authority appointing the commissioners, to have printed all necessary ballots for use in elections, and the election commissioners are required to cause the official ballots to be printed by a printer sworn to keep the ballot secret under the penalty prescribed by law. The ballot to be so prepared and to be so withheld from public inspection, by section 4159, is to contain the names of all candidates who have been put in nomination not less than fifteen days previous to the day of election

by the primary election of any political party; and, in addition to this, the election commissioners shall also have printed on the ballot the name of any qualified elector who has been requested to be a candidate for any office by a written petition signed by the number of qualified electors prescribed, which in case of a county office is fifty.

It is argued that the appellants were in duty bound to know just what the action of the election commissioners was in determining the form of the ballots, and in determining what names should appear thereon, and that it was their duty, if they objected to the names of the appellees being placed thereon, to institute some sort of legal proceeding to prevent the election commissioners from printing them on the official ballot. The official ballot, as has been shown, was to be secret from all public inspection. The appellants could not, therefore, have known what names the election commissioners had seen proper to place on it. Moreover, they could not have known what names he would place on it until he had actually placed them on the ballot. If placing the names of the appellees on the ballots in response to a petition from electors numbering less than fifty was an irregularity only, then it might as well be said that it would have been a mere irregularity to place their names on the ballots upon a petition signed by only one elector, or upon no petition at all. If we once depart from the statutory definition we are in the midst of chaos, and the statute might just as well not have been enacted. In some states, as, for instance, in Montana, it is provided that publication shall be made of all nominations for ten days prior to the election. In *State* v. *Franshan* (Montana), 48 Pac. 6, it is said that this publication was required to be made in order that any error or omission in the publication of the names or description of the candidates nominated for office, or in the printing of the ballots, might upon the application of any elector to the district court be cor--

rected, or cause shown for not making the correction. This court knows that we have no such statute, and the court also knows that no special statutory remedy is provided by which the wrong done by the election commissioners in this case, in causing to be printed on the official ballot the names of the appellees, could have been challenged or corrected prior to the election. Nothing was left to the appellants except to proceed, as they did do, under section 4186 of the Code of 1906, to contest the election.

Over and above all these considerations, it is insisted that the interests of the people of the state at large demand of this court that it shall enforce the statutes as written with regard to elections. It is important to the welfare of all the people that the statutes shall constitute a single rule, which all persons must be charged with knowledge of, and which they must obey. When we depart from this, then we are in the midst of confusion. Nor does this contention involve the establishment of a hard rule. The statutes are extremely simple and easily followed, and there is no reason why any elector should be deprived of his right to vote if these statutes are enforced.

It is respectfully submitted that the case of *McKenzie* v. *Boykin,* 111 Miss. 256, is conclusive in favor of the contention here made that the section of our Code describing and defining what names shall be printed on the official ballot is mandatory. In that case it was held that section 4160 was mandatory. It is not perceived that there is any difference in substance between the ruling of this court as to section 4160 and the contention made as to the character of the section providing what names shall appear on the official ballot.

The attention of the court is invited briefly to some rulings heretofore made by this court as to how courts should construe statutes enacted by the legislature. *Hazelhurst* v. *Mayes,* 96 Miss. 656; *Planters Bank* v. *State,* 6 S. & M.

628; *Moore* v. *Rowe*, 53 So. 626; *State* v. *Piazza*, 66 Miss. 426; *State* v. *Fragiacomo*, 71 Miss. 417; *Powell* v. *Smith*, 74 Miss. 142; *McElmore* v. *State*, 33 So. 225; *Adams* v. *Y. & M. V. R. Co.*, 75 Miss. 275. Applying these rules of construction, it cannot be doubted that the legislature intended that section 4159, of the Code of 1906, should be enforced exactly as it is written.

*Henry, Canizaro & Henry,* for appellees in response to questions by the court.

Most of appellant's reply brief undertakes to discuss the secrecy of the official ballot and counsel invites the court to read sections 4158 to 4176, inclusive, Code of 1906. In answer to the appellant's argument we desire to submit that the intent and purpose of the law is to have the *form* of the official ballot secret and thereby prevent imitation of the same by the use of spurious ballots at the election. There is no law in our statute that makes the nomination of the candidate secret; on the contrary, the *nomination* of any candidate, whether by primary or by petition, is public property and is open to the public, the petition to have one stand for office is publicly circulated and signed and there is no statute law regarding any secrecy of the meetings of the election commissioners nor of their actions. Indeed their official acts are recorded public property and may be viewed by anyone interested or who desires to protect his rights. One desiring to avail himself of the law is required to act promptly and will not be permitted to withhold any information of his which would work a deception on others, and we again invite the court's attention to *Brewer* v. *Abby*, 82 Miss. 559.

It is urged by the appellant that he had no opportunity to make his objection in due time. We respectfully submit that an objection could and should have been made to the nomination by the petition of the appellees and

nothing prevented appellant from so doing in due time. His objection should have been made to the election commissioners who have the power, under our law, to hear evidence and fully determine the sufficiency of a petition, and had the election commissioners decided against appellants' petition and had the appellees' names printed on the official ballot over the appellants' protest, then (regardless of any court procedure) the appellant could not have been *held to be estopped* or to have *waived* his rights, but on the alternative, they are now estopped. We invite the court's attention to the authorities collated 20 C. J., at page 131, section 150.

ANDERSON, J., delivered the opinion of the court.

These cases were argued and submitted together. The controlling facts in each are the same. They are governed by the same principles of law. They are therefore considered and decided together. The cases involve a contest by appellants Dulaney and Hunt against appellees Brown and Mann, over the office of supervisor for the third and fifth supervisors' districts of Issaquena county. The proceedings were begun by appellants in the circuit court of said county and resulted in a judgment for appellees, from which appellants prosecute this appeal.

Appellees Mann and Brown, when the result of the regular November, 1923, election had been ascertained, were declared by the proper authorities to have been elected members of the board of supervisors of Issaquena county, and, accordingly, they were commissioned by the secretary of state, qualified by each giving bond according to law, and taking the required oath of office, and, when these proceedings were instituted, were serving as members of the board of supervisors of said county.

Appellants Hunt and Dulaney were candidates against appellees. Their names, with the names of the appellees, appeared on the official ballots as candidates for mem-

bers of the board of supervisors. Appellees received a majority of the votes cast in the election. Appellants, conceiving that under the law appellees were not entitled to have their names on the official ballots used in said election and to be voted for, instituted this contest to oust appellees from office and have themselves declared the legally elected members of the board of supervisors, instead of appellees. There was a judgment in favor of appellees, from which appellants prosecute this appeal.

The ground of appellants' contest is that appellees, under section 4159, Code of 1906 (section 6793, Hemingway's Code), were not entitled to have their names placed upon the official ballot, and therefore were not entitled to be voted for in the election, and that appellants' names, having been legally placed upon the ballot, and being the only names entitled to be thereon for the office involved, were legally elected and therefore entitled to said office. Section 4159, Code of 1906 (section 6793, Hemingway's Code), among other things, provides:

"The commissioner shall also have printed on the ballot the name of any qualified elector who has been requested to be a candidate for any office, by a written petition signed by at least fifteen qualified electors, for any beat or municipal office in a town or village of less than three hundred inhabitants, or fifty qualified electors for any other office."

Appellants were the regular Democratic nominees for the office in question in a primary election held in the summer of 1923, while appellees got their names on the official ballot in the regular election by petitions under said statute containing more than fifteen names each, but less than fifty. Appellants contend that at least fifty qualified electors were necessary to sign each of these petitions, while appellees contend it was only necessary that each have as many as fifteen. And appellees contend, further, that, if they are mistaken in that contention, after the general election such irregularities cannot be inquired into.

There is division among the members of the court on the first question, but on the second the court is in agreement. The first question, therefore is pretermitted.

In determining how far irregularities in party nominations for office will affect the result of the general election, the fundamental inquiry is whether or not the irregularity complained of has prevented a full, fair, and free expression of the public will. Unless the statute which has been violated in making the nomination expressly declares that the particular act in question is essential to the validity of the election, or that its omission shall render the election void, the statute will be treated as directory, and not mandatory, provided such act of irregularity is not calculated to affect the integrity of the election. Some courts have held that an election is not void, although ballots are used containing the name of a person not certified as a nominee, and some that, in the absence of a statutory provision to the contrary, an election is not invalidated by the fact that the nomination of the successful candidate was brought about by fraud, and not in the manner prescribed by the statute, provided it appears that a noncompliance with the law had not the effect of preventing a fair and free vote. And it has been held that the fact that the signatures to a nomination petition, which was required to be signed by a certain number of qualified electors, were forged will not invalidate the election. 9 R. C. L., section 161, p. 1172, and notes.

There is no claim whatever upon the part of appellants that the alleged irregularity in placing the names of appellees on the official ballot affected the integrity of the election; that it had the result to prevent the full, free, and fair expression of the public will. No elector could have been led into voting for a candidate he did not want to vote for. The electors had a free choice as between appellants and appellees; they preferred appellees, and so declared by their ballots.

Appellants argue, however, that *McKenzie* v. *Boykin,* 111 Miss. 256, 71 So. 382, is decisive of this question in their favor. We do not so understand that case. The question in that case was, using the language of the court, "whether or not an elector in a general election can vote for any person for office other than one whose name is printed on the official ballot, by writing thereon the name of his choice for the office, except in the case of the death of a candidate." The court held that the elector was confined to the names printed on the ballot, except in case of the death of one of the candidates whose name appeared on the official ballot. In that case no candidate whose name had been printed on the ballot had died; nevertheless a majority of the electors voting had written on the ballot the name of their choice for one of the offices, and marked opposite the name so written a cross-mark. In effect, the court said in that case that the action of the electors in so mutilating their ballots affected the integrity of the election. The court said, in part:

"To hold otherwise would, in effect, destroy the secrecy of the ballot, and put the timid voter at the mercy of those who might coerce him, and put the corrupt voter within the easy grasp of the bribe giver; for, as illustrated, the voter could easily agree beforehand that he could write the name of some particular person on the ballot for any particular office, and the man who has the power to coerce him, or the man who bought his vote, would know whether or not the ballot had been cast according to his behest."

To hold that each of the requirements of the primary election law may be inquired into in a contested election case, after the result of the general election has been declared, it appears, would lead to many evils, while the principle we are laying down would lead to far fewer evils.

*Affirmed.*