GREGORY *v.* SANDERS.

(In Banc.   Oct. 25, 1943.)

[15 So. (2d) 432.   No. 35501.]

J. D. Guyton, of Kosciusko, for appellant.

H. T. Leonard, of Kosciusko, for appellee.

**D. E. Crawley**, of Kosciusko, for appellee.

**Roberds, J.,** delivered the opinion of the court.

This is an election contest. Gregory, contestant, seeks to have thrown out and not counted 133 absentee votes, which, if done, will result in his having a majority of the remaining votes cast at the first Democratic primary held August 3, 1943, for state senator in Attala County, and will entitle him to be declared the Democratic nominee for that office. The County Executive Committee, on the regular count and on a re-count at the request of Gregory, counted these votes and declared Sanders the nominee. That finding was confirmed by a special court organized under the Corrupt Practice Act, Laws 1935, Ex. Sess., ch. 19, upon a contest before that court by Gregory, from which judgment he appeals.

The contest arises out of this state of facts: Gregory and Sanders and one J. M. Gregory announced as candi-

dates for the state senate from Attala County, and proceeded to make public campaigns for the office. About July first the County Executive Committee instructed its chairman to prepare the official ballots and have them printed. He did that. The ballots contained the three above named parties as candidates for the state senate. They also contained the names of all the candidates for county district and beat offices, as well as those for state and county offices. The name of the precinct was left blank on the back thereof. In other words, these ballots contained the names of all candidates, whether state, county, or county district, or beat offices, for which the electors of Attala County were to vote at any and all voting boxes, and in any and all voting precincts, in the county. About July 13th some 600 of such ballots had been printed and the next day they were delivered to the circuit clerk to be by him, as requested and needed, mailed to the electors of that county who were serving in the military forces of the country for their use in voting in that primary, as authorized by Chapter 202, Laws of Mississippi 1942. The clerk began immediately mailing these ballots and a total of 188 were mailed.

July 3rd was the closing date for candidates to announce and pay the required fee to the County Executive Committee, which, in the case of candidates for state senate, was five dollars. J. M. Gregory failed to pay that fee. However, he appears to have continued his campaign until just before, or to, the date of the primary. An effort was made to get Sanders and Luther Gregory to wave the fee-paying requirement as to J. M. Gregory and to consent for the Committee to place his name on the ballot without such payment. Sanders signed a written agreement to that effect dated July 24th, but Luther Gregory would not enter into the agreement.

This situation seemed to call for the printing of another ballot, and on or about July 22nd the Committee directed its chairman to have another ballot prepared, leaving off the name of J. M. Gregory. This the chair-

man did. This ballot contained the names of all state and county candidates but only the names of the county district and beat candidates to be voted for in the precinct named on the back of the ballot, the name of which precinct had been left blank on the ballot as printed, but which appears to have been filled in to comply with the district in which it was being used. These were the ballots used by the home voters. Naturally, the ballot sent to the soldiers was larger than the one used by the home voters.

Of the 188 absentee soldier ballots mailed out 133 came back, properly voted, and found their way through the machinery prescribed by said Act into the proper voting boxes of the county. Of these, 26 voted for Luther Gregory, 7 for J. M. Gregory, and 100 for Sanders. The home vote was 1784 for Luther Gregory and 1758 for Sanders and none for J. M. Gregory; so that if the absentee votes are counted Sanders is the nominee; if they are not counted Gregory is the nominee. Therefore, the contestant seeks only to throw out the absentee vote and does not ask for another election.

Contestant says these absentee votes are condemned under the old statute, Section 4175, Code of 1906 (not brought forward into the present Code), which prohibited a voter from placing "any mark upon his ballot by which it can afterwards be identified as the one voted by him," and as announced in Steele v. Calhoun, 61 Miss. 556; Oglesby v. Sigman, 58 Miss. 502, construing Section 137, Code 1880, and Guice v. McGehee, 155 Miss. 858, 124 So. 643, 125 So. 433, construing said Section 4175, Code of 1906. The facts do not bring these ballots within those statutes and cases even if they can be applied here. It is true these absentee ballots can be and have been identified as a class, but no particular ballot of that class can be identified. There is no mark on any ballot which distinguishes that ballot from any other of that class, or which would enable any one to tell for whom that particular vote was cast. 18 Am. Jur., Elections, Section 197.

The other, and main, contention of appellant is that the absentee-ballot was not a regular ballot, and that the votes cast thereby are illegal and invalid. It is urged by him that Section 1, Chapter 202, Laws of 1942, requires that the absent soldier shall be sent a "regular" ballot and that this provision is mandatory; that under Section 5864, Code of 1930, primaries shall be governed and regulated by the election laws of the state, unless otherwise provided; that Section 5882, said Code, requires the County Executive Committee to have the ballots printed, and sets out certain things the ballots must contain and leaves others to the discretion of the committee, and then says "No ballot shall be used except those so printed;" that Section 6226, said Code, requires the printing on the back "official ballot" and, finally, that Section 6241, under Registration and Elections, provides "A ballot not provided in accordance with law shall not be deposited or counted."

In reply to this appellee argues that Chapter 202, Laws of 1942, is a special Act, adopted for the purpose of enabling those in the armed forces to exercise their rights as electors, and that to accomplish that purpose the Act should be given a liberal construction; that the old absent voter law (Section 6289, Code of 1930, repealed by Chapter 292, Laws of 1932) required the absentee ballot to be printed in a color different from the regular ballot; that the absentee voter should not be charged with errors, or omissions, of those charged with the duty of having the ballot printed; that no absentee voter in this case is at fault; that these ballots must be mailed early in order that the soldiers located in the various parts of the universe may cast their ballots, and the legislature knew that and so provided; that under Section 5883, as to primaries, and Section 6236, as to elections, if the printed ballots be lost or stolen, or the election managers fail to obtain the printed ballot, or the supply is exhausted, the electors may write upon the ballot the name of the candidate of their choice; that there is no charge of fraud or inten-

tional wrong-doing in this case, and that, in any event, there was here a full, free and fair expression of the voters, and that if all of the seven votes cast for J. M. Gregory, whose name should not have been on the ballot, are counted for appellant-contestant, he yet has a minority of the total votes cast, and therefore he has not been harmed and is not in position to complain.

We are thus confronted with the questions (1) whether the provision of Chapter 202, Laws of 1942, as to the form of the ballot is mandatory and the failure to comply therewith in the manner shown herein renders the votes cast by such ballot illegal, and (2) whether appellant is in position to complain.

On the first proposition, it will be remembered that there is no charge of fraud or intentional wrong-doing in this case; nor does it involve any complaint as to any county district, or beat, candidate.

The statute must be construed in the light of the circumstances under which it was enacted and so as to carry out the objects thereof if this can be done without doing violence to its provisions and mandates. It was the intention of the legislature to provide a means for the absentee-soldiers to exercise their right of suffrage. It knew these soldiers were in distant lands in various parts of the universe—many of them thousands of miles away. It recognized, and so provided, that the ballots had to be mailed to them early, if they were to be received and voted and returned long distances through congested mails by the date of the primary or election. The legislature knew that a change in the ballot might often be necessary between the date of mailing these ballots and the date of the election—such as death, disability, or withdrawal of a candidate, or other conceivable cause. The exercise by these absentees of this right to vote should not be defeated except by express mandate of the statute, or to prevent grave injustice or wrong to another. The statute should be given a liberal construction to effectuate its aims and purposes. We think the language

of this Court in Hunt v. Mann, 136 Miss. 590, 101 So. 369, 370, is applicable to this case: "In determining how far irregularities in party nominations for office will affect the result of the general election, the fundamental inquiry is whether or not the irregularity complained of has prevented a full, fair, and free expression of the public will. Unless the statute which has been violated in making the nomination expressly declares that the particular act in question is essential to the validity of the election, or that its omission shall render the election void, the statute will be treated as directory, and not mandatory, provided such act of irregularity is not calculated to affect the integrity of the election."

So considering the objects to be accomplished by and the circumstances surrounding the enactment of this special statute, we hold that the requirement in Section 1 thereof as to the form of the ballot is directory and not mandatory, and a substantial compliance therewith exercised in good faith under the existing circumstances of each case, where no wrong or injustice results, meets the requirements thereof, and that such requirement was met in this case.

On the second proposition, if contestant is given credit for all of the votes cast for J. M. Gregory he yet has a minority of the votes cast. He has suffered no injury and has no right to complain under the facts of this case. In Shines v. Hamilton, 87 Miss. 384, 39 So. 1008, 1010, the court used this language: "There is no charge of fraud, and, conceding the existence of all the irregularities complained of, the will of the people was fairly and honestly ascertained. This is the sole purpose of all elections. When the will of the sovereign people has been so fairly expressed, it should control. This court will not countenance for purely technical reasons an overthrow of the result."

We are not to be understood as condoning the use by resident voters of different ballots, or such use by other voters which results in fraud, or the denial of a sub-

stantial right of, or substantial harm to, a contestant, or which defeats the public will, or prevents a full, fair and free expression of the voters. We decide this case under the special statute and the peculiar facts and circumstances surrounding this case.

Affirmed.