SIMMONS *v.* CRISLER.

(In Banc.   Dec. 11, 1944.)

[20 So. (2d) 85.   No. 35723.]

**Hugh F. Causey**, of Cleveland, and **J. M. Talbot**, of Clarksdale, for appellant.

Stovall Lowrey, Maynard, FitzGerald & Maynard, Vincent J. Brocato and Dan C. Brewer, all of Clarksdale, and W. B. Alexander and John T. Smith, both of Cleveland, for appellee.

Argued orally by **Hugh F. Causey**, for appellant, and by **W. B. Alexander** and **Stovall Lowrey**, for appelleè.

**Smith, C. J.,** delivered the opinion of the court.

At a special election to fill the office of District Attorney held on February 1, 1944, there were three candidates, Simmons, Crisler, and Luckett. Simmons was declared by the election officers to have received a plurality of nine votes over Crisler, his nearest opponent, and was awarded a certificate of election and received from the .Governor a commission as District Attorney. Within twenty days after the election Crisler filed a petition for a contest thereof in the court below in accordance with Section 3287,.Code 1942. This petition challenged the legality of the votes counted for Simmons at Mound Bayou voting precinct in Bolivar County, and alleged that if these votes should not be counted that the petitioner would appear to have received a majority of the legal votes cast at the election. Simmons' plea to this petition was in the form of an answer, one paragraph of which denied the illegality of the votes cast at Mound Bayou and others alleged in. substance that even if the Mound Bayou votes should be thrown out that nevertheless Simmons would appear to have received the greatest number of the legal votes cast at the election for the reason that the election was not lawfully held in two election districts in Coahoma County, to wit: the Riverton and the West Clarksdale Districts. The evidence relative to which will be hereinafter set forth. By an amendment to this answer Simmons set forth another reason to be hereinafter stated as to why he should be held to have received a majority of the legal votes cast at the election. At the close of the evidence the court below directed the jury to return a verdict for Crisler, and there was a verdict and judgment accord-

ingly. In directing this verdict the court below necessarily held that the votes cast for Simmons at Mound Bayou were illegal, but the correctness of that holding is not before us, for it is not here challenged by Simmons.

*As to the legality of the votes cast in the Riverton election district.* Sections 3207, 3208, and 3209, Code of 1942, provide that the board of supervisors shall define the metes and bounds of the several election districts in the county and there shall be only one voting place in each district to be designated by the board by an order on its minutes. Pursuant thereto the Board of Supervisors of Coahoma County designated Binder's Store as the voting place for the Riverton District. A day or two before the election one of the managers appointed for holding the election at Binder's Store, and who was also a member of the firm of Binder Brothers, who owned and operated Binder's Store, advised one of the election commissioners "that they would not be able to hold it (the election) there (Binder's Store)." Without the consent of Binder Brothers the election could not be held at their store; consequently this election commissioner directed the managers of the election to hold it at a pressing shop across a public street and about one hundred feet from Binder's Store, at which pressing shop elections in the district had theretofore been occasionally held. This election was held in that pressing shop and except for the change in the voting place, complied in all respects with the requirements of the statute for holding elections; and no complaint is made that any elector was prevented from voting because of the place at which the election was held or that the vote cast did not fully and fairly express the will of the voters who there voted. When it developed that Binder's Store could not be used as the voting place for the election district, it was too late for a special meeting of the board of supervisors to be called for designating another voting place, and, confronted by this emergency, the managers of the election could do but one or two things, either call the voting off in that dis-

trict and thereby deprive the electors therein of their constitutional right to participate in the election, or receive the votes at another place; and they wisely and rightly chose the latter. Not only did no harm to the voters or any of the candidates result therefrom, but no contention is made that any could have resulted, and such being the case, the will of the voters should not be defeated by declining to receive the votes there cast. Pradat v. Ramsey, 47 Miss. 24. This thought will be hereinafter further developed.

*As to the legality of the votes cast in the West Clarksdale Election District.* Under the governing statutes the county election commissioners are required to appoint three managers of the election in each election district, to whom shall be delivered, among other things one ballot box and one poll book in which the names of the registered voters shall be entered alphabetically; these three managers are to receive the ballots, determine whether the persons offering to vote are qualified electors, count the votes cast and certify the results of the election in the district to the election commissioner. The Board of Supervisors of Coahoma County some years ago designated Firehouse No. 2 as the voting place for the West Clarksdale District. This district usually polls a large vote and the custom had grown up, without the sanction of the board of supervisors or change by it in the boundaries of the district or in the designation of its voting place, for the election commissioners to designate the election district as West Clarksdale No. 1 and West Clarksdale No. 2; to appoint three managers for West Clarksdale No. 1 and three for West Clarksdale No. 2; to deliver to the managers of West Clarksdale No. 1 a ballot box and a poll book containing the registered electors whose names begin with the letter "A" and to and including the letter "L"; and to deliver to the managers of West Clarksdale No. 2 district one ballot box and a poll book containing the registered electors whose names begin with the letter "M" and to and including the letter "Z". Such was

the course pursued here when this election was held. Two sets of managers held the election at Firehouse No. 2, three of them sitting at one end of a table and three at the other, one set receiving the ballots of persons whose names began with the letters "A" to "L" inclusive, and the others, those whose names began with "M" to "Z", inclusive, each set of managers using a separate ballot box and assisted by separate clerks. The ballots of persons whose names began with the letters "A" to "L" were counted and certified to by the managers who received them, and those of persons whose names began with the letters "M" to "Z", inclusive, were counted and certified to by the managers who received them. Each set of managers conducted the election as to the electors allotted to them, in the exact manner that one set of managers would have been required by the statute to conduct the election had this division of responsibility therefor not been made. No elector of the district was deprived of an opportunity to vote and no contention is made that the election was not fairly conducted and did not express the will of the electors in the district who desired to vote. All of the electors of the district having had an opportunity to vote and their choice of the person they desired to fill the office having been fairly expressed, their will should not be frustrated by a departure by the managers of the election from the method designated by the statute for holding the election (Pradat v. Ramsey, supra) unless obedience to the provision of the statute violated would prevent the defeat of the will of the electors by fraudulent methods hard to detect and to prove when afterwards challenged, as was the case in Hayes v. Abney, 186 Miss. 208, 188 So. 533, Briggs v. Gautier (Miss.), 15 So. (2d) 209. The court below committed no error in declining to reject the votes cast at either the Riverton or West Clarksdale election districts.

This brings us to the third and last of the appellant's complaints. By an amendment to his plea, which as hereinbefore stated was in the form of an answer, the appel-

lant alleged that a large number of votes cast by named persons in several of the election districts, who had not paid their poll taxes. as required by Section 241 of the Constitution, should be thrown out and if this were done it would appear that the appellant had received the greatest number of legal votes cast at the election.

The court below sustained a motion by the appellee that the appellant be required to make this portion of his plea more specific by alleging for whom these alleged illegal votes were cast and for what year the voters casting them failed to pay their poll taxes, and required the appellant "to specify in said amended answer for whom each of the alleged disqualified voters voted in the Special Election held February 1st, 1944, if he knows, and if he does not know, he shall be required to so state," and that he specify therein for what year or years the persons who cast the votes failed to pay their poll taxes.

The appellant then amended his plea by alleging "that until proof is made he is unable to say for whom said illegal votes were cast", and that the poll taxes which these voters failed to pay were for the year 1943. A demurrer to this amended plea challenged the failure of the appellant to set forth the name of the candidate for whom these alleged illegal votes were cast and the allegation therein that the alleged failure of these voters to pay their poll taxes for the year 1943 disqualified them from voting. This demurrer was overruled.

Another demurrer in the form of a motion "to strike from the said amendment all allegations with reference to the failure of certain voters to pay their poll taxes for the year 1943" on the ground "that the non-payment of the 1943 poll tax by any voter did not render his vote illegal for the reason that it was not necessary for him to pay said poll tax in order to entitle him to vote in the election which was held on the first day of February, 1944", was sustained, and the appellant did not further plead. While introducing his evidence he offered, but

was not permitted, to introduce the alleged disqualified voters and ascertain from them for whom they voted.

Two questions are here presented: (1) Was it necessary for the appellant to set forth in his plea for whom these alleged illegal votes were cast; and should that question be answered in the affirmative, then (2) did the alleged failure of these voters to pay their poll taxes for 1943 disqualify them from voting in this election.

Under Section 3287, Code 1942, a person desiring to contest the election of another returned as elected to any office may file a petition therefor in the circuit court of the proper county "setting forth the grounds upon which the election is contested" from which it necessarily follows that when a contestee pleads an affirmative defense to the contest, he must also set forth the grounds upon which his defense rests. This is in accord with the general rule that in order to obtain relief from a court, a litigant must make it appear by his declaration, bill of complaint, or plea that he is entitled thereto. Unless these challenged votes were cast for the appellee, they cannot be deducted from those counted for him, and, therefore, cannot affect the result of this election. Consequently, in order to invoke the aid of the court in this particular, it is necessary for the appellant's plea to allege that these votes were cast for the appellee. 29 C. J. S. Elections, sec. 268; 18 Am. Jur. Elections, sec. 297; Kelly v. State, 79 Miss. 168, 30 So. 49. We are not troubled here, as some courts have been, by inability to compel an illegal voter to disclose for whom he voted, as will appear from Trahan v. Simmons, 191 Miss. 353, 2 So. (2d) 575. If the appellant is unable, as he says, to ascertain and therefore cannot allege for whom these votes were cast, that is just his hard luck for which the appellee is in no way to blame. This difficulty not infrequently confronts a pleader but does not excuse him from alleging and proving facts necessary to warrant the court in granting him the relief sought. The appellant having failed to set forth in his plea for whom these alleged illegal votes were cast, the court below com-

mitted no error in striking therefrom all of its allegations relative thereto, and consequently it will not be necessary for us to decide the second of these questions.

Because of the fact that the court below erroneously held that the appellant had given a good excuse for not setting forth in his plea for whom these votes were cast, its judgment ordinarily would not be affirmed even if we should hold that the failure to pay their poll taxes for 1943 disqualified these voters from participating in this election, but the cause would be remanded to the court below so that the appellant might amend his plea, if he can, in this particular. But to do this here would be vain and fruitless, for the appellant says, by his plea, that he does not know and cannot ascertain for whom these votes were cast unless and until proof thereof is made at the trial.

When the votes cast for the appellant in the Mound Bayou District are deducted, as they must be, from those there counted for the appellant, it will appear that the appellee received the greatest number of legal votes cast in the election.

Affirmed.