# WALKER *v.* SMITH.

Division A. Jan. 14, 1952.

No. 38386 (56 So. (2d) 84)

W. E. Gore and E. H. Cunningham, Jr., for appellant.

E. L. & W. W. Dent, and Rex McRaney, for appellee.

Lee, J.

Fordie Walker and H. B. Smith were candidates in the Second Democratic Primary in August 1951, for the office of supervisor of District Two of Simpson County. The votes, as tabulated by the Executive Committee, showed 617 for Walker and 612 for Smith; and Walker was declared the nominee.

Following this action, Smith filed a contest with the Executive Committee, with particular reference to 3 precincts, and, when it was disallowed, he sought and obtained a judicial review as provided by the Corrupt Practices Act, Article 2, Chapter 1, Vol. 3, Code 1942.

On that hearing the special tribunal, composed of the presiding judge and the election commissioners, held that the result of the primary was in doubt, and ordered another primary at all 6 of the precincts in the District. Walker prosecutes a direct, and Smith a cross, appeal.

Smith's petition, in each instance, alleged violation of, and noncompliance with, the provisions of Chapter 237, Laws of 1950, in a number of particulars. For instance, the absent voter envelopes bore the officer's seal, but Smith contended that the impression of the seal thereon did not touch the lids of the envelops as required by Section 9 of said chapter, and, on that account, all of such ballots were illegal and void. Walker received 61 and

Smith 44 of such ballots. If the absent voter ballots were illegal on that account, and should not be counted, Smith would have a majority of 18.

Walker contended before the special tribunal, and contends here, that the petition was insufficient, and that the petitioner made additional allegations before the special tribunal, which were not contained in the petition before the Committee. This contention was overruled by the trial court. This Court has held that the petition on appeal to the special tribunal may not overrun the allegations of the original petition before the Committee. Fillingane v. Breland, Miss., 54 So. (2d) 747; Houston v. Baldwin, Miss., 54 So. (2d) 543. But it is unnecessary to deal with that question inasmuch as this decision rests on other grounds.

The bill of exceptions discloses that the irregularity in connection with the impression of the seal on the envelopes arose on account of an error by the printer. Thus, to invalidate the ballots on that account would cause the result of the election to be determined by accident, inadvertence or mistake, when some of them were otherwise legal. The special tribunal held that this provision of the law is directory and not mandatory.

We think that the trial court was correct in so holding. ▮▮ ▮ Section 9 of said Chapter 237, supra, does require that "the officer shall thereupon impress his seal upon the lids of said envelop in such manner and so firmly that same cannot be opened without detection." This is doubtless a salutary provision. But Section 10, of said chapter, which deals with the reception and counting of absent voter ballots, makes no reference to improper impression of the officer's seal, and contains no mandate for the rejection of a ballot in an envelope on which the seal has not been impressed in accordance with Section 9 thereof. Consequently, in the absence of such a requirement, the provision must be held to be directory only. In Hunt v. Mann, 136 Miss. 590, 101 So. 369, 370, this Court said: "In determining how far

irregularities in party nominations for office will affect the result of the general election, the fundamental inquiry is whether or not the irregularity complained of has prevented a full, fair, and free expression of the public will. Unless the statute which has been violated in making the nomination expressly declares that the particular act in question is essential to the validity of the election, or that its omission shall render the election void, the statute will be treated as directory, and not mandatory, provided such act of irregularity is not calculated to affect the integrity of the election.''

 It must be kept in mind that the legislature was endeavoring to provide means for absent voters to exercise their right of suffrage. The result, therefore, ought not to be lightly tossed aside, unless the irregularity has prevented a full, fair and free expression of the public will. Especially is this true when the special tribunal found as a fact that there was no fraud or intentional wrongdoing in this regard. Gregory v. Sanders, 195 Miss. 508, 15 So. (2d) 432. See also Shaw v. Burnham, 186 Miss. 647, 191 So. 484, where the endorsement of ''help'' on the face, instead of on the back, did not invalidate the ballots.

The additional grounds of contest revolved around noncompliance with other provisions of Chapter 237, supra. Suffice it all to say, Smith sought not to void the election, but rather to show that, in fact, he was nominated by the majority of the qualified votes.

The presiding judge and the commissioners, all concurring, declared to be illegal and void the series of ballots hereinafter enumerated, which action we approve and affirm for the several reasons hereinafter to be stated:

 (1) Four regular ballots, one of which was voted by a perpendicular mark, and the other 3 being uninitialed. Three of these ballots were for Smith and 1 for Walker. The action of the court automatically reduced Walker's vote to 616 and Smith's to 609. This

260

action was correct under the authority of Guice v. McGehee, 155 Miss. 858, 124 So. 643, 125 So. 433, and Chinn v. Cousins, 201 Miss. 1, 27 So. (2d) 882.

■ ■ (2) Fifty absent voter ballots, where the clerk was designated to deliver, but instead, he placed them in the ballot boxes and delivered each of the boxes locked to a manager on the afternoon before the primary. This action was correct, because the manner of delivery was in violation of Section 10, Chapter 237, supra.

■ ■ (3) About 20 absent voter ballots, where the clerk himself procured doctors' certificates, about 10 of which were also double, that is, they were used for both primaries. This action was correct, because the certificates were not obtained in conformity with Section 5, Chapter 237, supra.

■ ■ (4) Two absent voter ballots of Mr. and Mrs. R. S. Stevens, where the affidavits on the application and on the envelopes were not subscribed. This action was correct, because by Section 6, Chapter 237, supra, the elector "must execute the following form" of application, and in each instance, it is required to be signed by the affiant, and "subscribed and sworn to" before a notary public, or other qualified officer.

■ ■ (5) Two absent voter ballots, where the persons designated to deliver were not qualified electors. This action was correct, because by Section 7, Chapter 237, supra, the person designated to deliver must be a qualified elector of the precinct where the ballot is delivered.

■ ■ (6) Two absent voter ballots delivered and counted the day after the primary. This action was correct, because there is no authority whatever for one to vote on the day after the primary.

■ ■ (7) One absent voter ballot, voted under power of attorney. This action was correct, because there is no authority whatever for such voting.

 ██ (8) Two absent voter ballots, where no one was designated to deliver. This action was correct, because such designation is requisite under Section 6, Chapter 237, supra.

 ██ (9) One absent voter military ballot, which did not state the age of the voter. This action was correct, because under Section 3197, Code of 1942, the voter must make oath that he is "above the age of twenty-one years".

It will be seen, therefore, that the special tribunal declared 80 of the absent voter ballots to be illegal and void, leaving only 25 of such ballots legal and valid.

The special tribunal further found as a fact that it was not possible to tell for whom the illegal ballots were cast, because they were commingled with the other ballots.

Thus, the question is posed as to whether or not the result of the primary was in doubt, and as to whether or not Walker should have been declared the nominee.

In the case of Hayes v. Abney, 186 Miss. 208, 188 So. 533, 535, where, because of two counts of the votes, with different results, it was impossible to reconcile the figures, this Court said: "The rule is that where enough illegal votes were cast to change the result or leave it in doubt, the election is void."

But, in the case of Trahan v. Simmons, 191 Miss. 353, 2 So. (2d) 575, it was held that the rule announced in Hayes v. Abney, supra, is only applicable in quo warranto proceedings, to oust a person who has intruded himself into office under an election void for the stated reason. It was said to be inapplicable in a contest between the candidates where the loser "seeks, not to avoid the election, but to avail of it and to show by his contest that in fact he was elected by the majority of the qualified voters who voted. In such a contest he has the burden of the proof; and manifestly this is not met simply by showing that enough illegal votes were cast to change the result or leave it in doubt." It was then further said that, in

such a case "the only practicable manner, by which a contestant may show that in fact he was elected by the majority of the legal voters is to put on the stand the illegal voters, or enough of them, and to show by them, or enough of them, that their illegal ballots were cast for his opponent."

Likewise, in the case of Simmons v. Crisler, 197 Miss. 547, 20 So. (2d) 85, 88, it was held that the contestant must allege and prove that the illegal ballots were cast for his opponent. The Court there said: "Unless these challenged votes were cast for the appellee, they cannot be deducted from those counted for him, and, therefore, cannot affect the result of this election. Consequently, in order to invoke the aid of the court in this particular, it is necessary for the appellant's plea to allege that these votes were cast for the appellee. * * * If the appellant is unable, as he says, to ascertain and therefore cannot allege for whom these votes were cast, that is just his hard luck for which the appellee is in no way to blame."

Only 25 of the 105 absent voter ballots for supervisor were held to be legal. But Smith did not undertake to show how many of the 80 illegal ballots were cast for his opponent. Since he received 44 absent voter ballots himself, at least a large number of his ballots were illegal. Both candidates received illegal ballots, but just how many were received by each does not appear. Smith was the contestant. The burden of proof was on him. He did not meet it. So far as this record is concerned, all of his absent voter ballots could have been illegal, in which event, his illegal ballots would be greater in number than those of his opponent.

The result of the election was not in doubt. The executive committee declared that Walker received a majority of the qualified votes. The proof was not sufficient to show that the committee was in error.

In view of this conclusion, it is not necessary to give consideration to the other assignments, which involve

irregularities which the special tribunal held to be directory.

█ █ The judgment of the special tribunal is, therefore, reversed, and a judgment will be entered here, upholding the action of the Executive Committee in declaring Walker to be the nominee of the Democratic party. Since Walker's name should have been placed on the ticket as the nominee in the regular election in November 1951, but, because of the error of the special tribunal, his election was not consummated, it is further ordered that an election be called and held, as provided by Section 3187, Code of 1942.

Reversed; judgment here; and election ordered.

ON SUGGESTION OF ERROR.

Feb. 4, 1952 (57 So. (2d) 166)

Ethridge, J.

Trahan v. Simmons, 1941, 191 Miss. 353, 2 So. (2d) 575, and Simmons v. Crisler, 1944, 197 Miss. 547, 20 So. (2d) 85, involved contests of special elections for an office, and it was there held that a contestant has the burden of proving the existence of illegal votes, and that there were enough of such votes cast for the contestee as to change the result of the election. Appellee says that the court erred in the instant case in applying that rule to a party primary election for a nomination; that under Hayes v. Abney, 1939, 186 Miss. 208, 188 So. 533, and Harris v. Stewart, 1940, 187 Miss. 489, 193 So. 339, the rule as to primaries does not place this burden upon a contestant, and that under those cases the contestant need only show that there were enough illegal votes to change the result or leave it in doubt.

However, the rule requiring the contestant to meet the above-stated burden of proof has been applied in primary election cases since the enactment of the Cor-

rupt Practices Act of 1935, Code 1942, Section 3158 et seq. Hickman v. Switzer, 1939, 186 Miss. 720, 191 So. 486; Houston v. Baldwin, Miss., 54 So. (2d) 543, cited in our original opinion. A competing principle, set out in Code of 1942, Sec. 3167, is that where there has been such a substantial failure to comply in material particulars with the requirements of the Corrupt Practices Act that "it is impossible to arrive at the will of the voters", the entire box may be thrown out or the court may order another election to be held. For example, in Hayes v. Abney, supra, the court found that there was a total departure from the statutory requirements by failure of the managers to have voters sign receipts for their ballots, and declared the primary election void. To the same effect are Briggs v. Gautier, 1943, 195 Miss. 472, 15 So. (2d) 209; May v. Layton, Miss., 56 So. (2d) 89.

What constitutes such a substantial failure to comply in material particulars with the requirements of the statutes in a primary election, which would fall within the foregoing classification so as to require the throwing out of a box or calling a new election, depends upon the facts and circumstances in each particular case, including the nature of the procedural requirements violated, the scope of the violations, and the ratio of illegal votes to the total votes cast. For example, in May v. Layton, supra, 836 votes out of a total vote of 2213 were held to be illegal, and it was said that this result, by holding void more than one-third of the total votes cast, made it impossible to determine the will of the voters and constituted such a substantial failure to comply with the statutes as to require a new election.

Appellee cites Harris v. Stewart, supra, as supporting his contention, but that case was decided upon its peculiar facts. It went off on a demurrer by the contestee to the contestant's petition, in effect admitting the truthfulness of the averments of the petition. Some of these were that there was a general practice and custom in the county to allow disqualified persons to vote, and that the manag-

ers at the two challenged boxes not only knowingly permitted disqualified persons to vote but actually encouraged them to do so, assuring them in advance that their illegal votes would be received and counted. Such a substantial departure was within the rule of Hayes v. Abney.

In the present case, there were 80 illegal votes, and a total vote of 1229, the illegal votes being only 6.5% of the total votes cast. We do not think that the present facts would warrant the court in saying that there is such a substantial failure to comply in material particulars with the statutes as to invalidate the election, as occurred in May v. Layton, supra, and only under such a state of facts is the contestant's burden of proof reduced from a showing that the contestee's illegal votes if eliminated would change the result, to proving only that enough illegal votes were cast to change the result or leave it in doubt. Appellee therefore failed to meet his burden of proof in contesting Walker's nomination.

Suggestion of error overruled.

**McGehee, C. J.**, and **Lee, Kyle** and **Arrington, JJ.**, concur.