PEGRAM v. WEST HATCHIE AND OWL CREEK DRAINAGE
DISTRICT.

[67 South. 453.]

COURTS. *Creation. Constitutional provisions. "Inferior court."*
Laws 1912, chapter 197, providing additional methods of organiz-
ing and maintaining districts, is not violative of Constitution
1890, section 144, vesting the judicial power of the state in the
supreme court and such other courts as are provided for in the
Constitution, or of section 172, providing that the legislature
shall from time to time establish such other inferior courts as
may be necessary since, though the board of drainage commis-
sioners is given some judicial powers, most of its duties and
functions are administrative, and the legislature does not make it
a court in the strict definition of the term, but merely declares
it a court of record so as to make its records those of courts of
record, and morever, if the board is a court of record because
so denominated in the act, still its establishment is expressly
authorized by section 172, since if it is a court, it is an "inferior
court," as it has only limited jurisdiction.

APPEAL from the chancery court of Tippah county.
HON. J. G. McGOWEN, Chancellor.

Suit by S. W. Pegram against the West Hatchie and
Owl Creek Drainage District. From a decree for de-
fendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*T. E. Pegram,* for appellant.

The authority of the legislature to establish a court
which is not specifically provided for in the constitu-
tion was questioned in the case of *Thomas* v. *State,* 5
Walker 20. In that case the legislature created an in-
ferior criminal circuit court, inferior to the circuit court
by conferring upon the latter the authority to bring
the record of any prosecution pending in the former
before them by a writ of *certiorari* whenever it was

made to appear that injustice was likely to be done in the criminal court. The circuit court was by said act thus invested with full supervisory and controlling power over the criminal court so established. For this reason the court held that the court established by legislature was an inferior court.

The question was again raised in the case of *Huston* v. *Royston*, 7 Howard, 453. In that case the legislature had established an inferior court of chancery, there having been provided by the constitution a superior court of chancery, and the supreme court in the case held that since the inferior court of chancery was under the control and supervision of the superior court of chancery the act establishing the inferior court was constitutional.

It was decided inferentially in the case of *Huges* v. *State*, 79 Miss. 77, that the legislature had the authority to establish a municipal court which is, in fact, a court similar in all respects to that of the justice of the peace. Such a court is clearly an inferior court. By reference to the authorities complied in the editor's note to the case of *People* v. *Luce*, reported in 28 A. & E. Ann. Cases, 1151, the note beginning on page 1160, the court may perhaps be enabled to find some authorities which may be helpful.

If the legislature may define a judicial function and may say what is or is not an inferior court, then, I am inclined to believe that the law in question may safely be declared constitutional; but if on the other hand we are to follow the strict letter of the constitution and give to its terms, words and phrases, the common and usual meaning, I think the law is unconstitutional. New necessities may enlarge old constructions, but I doubt it if the necessities are so urgent in this case as to warrant holding that the legislature had the right to establish a court of such functions as the one in question.

*Spight & Street,* for appellee.

The theory of all drainage laws, as held by all the courts in this and other states, is that it is the exercise of the police power of the state, for both public and private interests. In the case of *Cox* v. *Wallace,* 100 Miss. 525, 56 So. 461, which was an attack upon the constitutionality of sections 371 to 391 of the Code of 1906, Chief Justice MAYES in delivering the opinion of the court says: "That the statute is to be enforced by a board is no objection to its validity." Proceeding further the opinion copies with approval what is said in the cause of *Mound* v. *Miller,* 170 Mo. 240, 60 L. R. A. 190, as follows: "The details of the laws may be different, the agencies employed by the state to carry the law into effect may differ, but this in nowise affects the constitutionality of the law. The fact that under some laws the county court is charged with the duty of carrying the law into effect, while in others commissioners are provided for that purpose, and in others the people themselves are empowered to organize into corporations for drainage districts, makes no difference. It is competent for the state to raise up a governmental agency for the enforcement of its public powers, and for the purpose of enhancing its revenues and carrying its revenue laws into effect. The agency thus created is an arm of the state, a political subdivision of the state, and exercises prescribed functions of the government."

In the case at bar the legislature saw proper to confer upon the county board of drainage commissioners authority to enforce a drainage law, and prescribe therein the method of procedure, and conferred upon the chancery court a supervisory, or appellate power. This is the employment of one of the very agencies referred to in the opinion above quoted, and which, we think, applies with special force to this case.

In the case of *Jones* v. *Belzoni Drainage District,*
102 Miss. 796, 59 So. 921, the constitutionality of chapter
195, Act of 1912, was involved, though not identical
with the issue here, and Justice COOK, in delivering
the opinion of the court, referred repeatedly to the case
of *Cox* v. *Wallace, supra,* and all the contentions of the
complainant in that case were overruled.

In the case of *Mound City Land Company* v. *Miller,*
the case from which the supreme court of Mississippi
quoted in *Cox* v. *Wallace,* we find this further statement
near the top of page 204, 60 L. R. A. ——''such authority
may be lodged in any board or tribunal which the legis-
lature may designate.''

What is an inferior court? Section 172 of the Miss-
issippi Constitution following the provision in section
171 for the election of justices of the peace, and de-
fining their jurisdiction, says: ''Section 172. The legis-
lature shall, from time to time, establish such other
inferior courts as may be necessary and abolish the
same whenever deemed expedient.''

This section of the constitution confers upon the legis-
lature the discretion to determine whether or not other
inferior courts are necessary, and the courts of the state
will not interfere with this discretion unless the legis-
lature transcends its authority and enacts a law which
is violative of some section of the constitution. The
legislature, in their wisdom, and in the exercise of this
authority, have seen proper to constitute the board of
drainage commissioners of the county, one of the
agencies through which drainage laws may be enforced
and it makes no difference that other agencies for a
similar purpose may have been created, this act of 1912
is valid and enforceable until repealed, if not in conflict
with the constitution of the state.

It will be observed that the county board of drainage
commissioners in chapter 197 of the Acts of 1912, are
appointed by the chancellor, and that all their acts are

reviewable by the chancery court, and the proper machinery for appeals to that court is also provided in the act. This, we think, of itself, makes the board of commissioners an inferior court in the purview of the constitution. In every particular they constitute an inferior court just as much as the justices of the peace and boards of supervisors. They have special and limited jurisdiction, and unless the jurisdictional facts appear on the face of the record their judgments are nullities. There is no pretense in this case that all the jurisdictional facts do not appear. On the contrary the original bill shows that they had proper jurisdiction. If this board were to attempt to exercise any power beyond that conferred upon them by the act of their creation, it would of course be absolutely void. In this sense their jurisdiction is special and limited.

In 4 Words & Phrases, page 3580, quoting from 9 U. S. Reports (5 Cranch 173-185) 3 L. Ed. 70, this language is used: "Courts from which an appeal lies are inferior courts in relation to the appellate court before which their judgments will be carried." On the same page of Words & Phrases, it is said: "A court is inferior to another when it is placed under the supervisory or appellate control of such other court." On page 3581, of the same book, we find this declaration from the supreme court of Alabama: "This phrase 'inferior courts' means courts whose judgments or decrees can be reviewed by an appellate tribunal." On the same page quoting from 118 U. S. 113, 30 L. Ed. 108, it is said: "That the judicial power of Arizona shall be vested in a supreme court, and in such inferior courts as the legislative counsel may prescribe, and it was held that a county court having civil and criminal jurisdiction whose judgments and decrees the supreme court had a right to review on appeal is an inferior court." See, also, 16 A. & E. Enc. L, page 318 and notes.

It is conceded by counsel for the appellant that all doubt as to the constitutionality of the law are to be resolved in its favor. Our supreme court has repeatedly announced this doctrine. It is clearly stated in *Natches & S. R. Company* v. *Crawford*, 55 So. 596, and particularly in section 3, page 598, where we find this language: "All doubts are resolved in favor of the constitutionality of the statute. If there is reasonable doubt of its constitutionality it must be upheld by the courts."

"The statute is not to be condemned as unconstitutional unless it plainly conflicts with some provision of the fundamental law, and conflicts will not be presumed." *Hart* v. *The State*, 87 Miss. 171.

"Where there is a well-founded reasonable doubt of the constitutionality of a statute it shall be sustained." *State* v. *Henery*, 87 Miss. 125.

We do not think, therefore, that there is even a reasonable doubt as to the constitutionality of the Act of 1912 under consideration. We think it is clear that the county board of drainage commissioners is an inferior court, and that the legislature had the constitutional warrant when they declared in section No. 6 of said Act that: "The board of drainage commissioners shall be a court of record, etc."

Reed, J., delivered the opinion of the court.

Appellant, a citizen and taxpayer of Tippah county, filed his bill seeking an injunction against the issuance of bonds of the West Hatchie and Owl Creek Drainage District and the assessment, levy, and collection of taxes on his land for the payment of the bonds. The drainage district was organized under chapter 197 of the Laws of Mississippi of 1912, being an act to create additional methods of organizing and maintaining drainage districts. There is no question raised in this case as to the regularity or sufficiency of the organization of the district. Appellant in his bill claimed that chap-

ter 197 of the Laws of 1912 is in violation of section
144 of the Constitution of Mississippi, which section
reads, "the judicial power of the state shall be vested
in a supreme court and such other courts as are provid-
ed for in this Constitution," in that the county board
of drainage commissioners, which is by the act declared
to be a court of record, is not among the courts provid-
ed for in that section of the Constitution. He also
claimed that the chapter is in violation of section 172
of the state Constitution, which reads "the legislature
shall, from time to time, establish such other inferior
courts as may be necessary, and abolish the same when-
ever deemed expedient," in that the county board of
drainage commissioners is not an inferior court con-
templated by the section of the Constitution, and not
therefore within the constitutional provision thereof.
An answer was filed to the bill, which by denial present-
ed the issue of the constitutionality of the law. The
chancellor, upon hearing, denied the prayer of the bill
and held that chapter 197 of the Acts of 1912 is a valid
enactment and not in conflict with either section 144 or
section 172 of the state Constitution.

Counsel for appellant, in his brief, states that the
sole question for settlement in this case is:

"Whether or not the county board of commissioners,
as provided in said chapter, is a constitutional court;
or, stated differently, whether the legislature has author-
ity to establish a court of such functions, powers and
jurisdiction as is given in said chapter to the court call-
ed therein the county board of drainage commissioners."

It is provided in chapter 197 of the Laws of 1912
that, upon the filing of a petition by landowners for
the organization of a drainage district and the presen-
tation of the same to the chancellor, three drainage com-
missioners for each county in which the drainage district
lies in his chancery district shall be appointed by him.
The successors of these commissioners are to be appoin-
ted by the chancellor, who is authorized to fill vacan-

·cies which may occur on the commission. These com-
missioners are required to meet and organize by the
·election of one of their members as president. The clerk
of the chancery court is made ex officio clerk of the
board. To the commissioners is given jurisdiction over
the organization of all drainage districts within their
·county which may be organized under the provision of
chapter 197, Laws of 1912, and all jurisdiction over the
·construction and maintenance of all artificial or natural
drains constructed or improved in their· county under
the 'provisions of the act.

We quote in full section 6 of the act, which declares
that the county board shall be a court of record and
provides for meetings, quorum, etc.:

"The county board of drainage commissioners shall
be a court of record and shall have a seal which shall
be inscribed 'County Board of Drainage Commissioners
of —— County, Mississippi.' Any two members shall
constitute a quorum and they shall have regular meet-
ings at such times as they may by order provide, and
shall have called meetings whenever the president may
think the business before the board may require. They
shall have the power to issue all necessary process, com-
pel attendance of witnesses, and do any and all things
necessary to carry out the provisions of this chapter."

By section 60 of the act provision is made for appeal
from the orders or decisions of the county board to
the chancery court in/that county in which lies the
greatest number of acres of the drainage district. This
appeal is to be heard by the chancellor in term time or
in vacation.

We do not see anything in the provisions referred to
·of this act which is violative of the sections of the Con-
stitution as claimed by appellant. It will be seen that
the legislature by this statute committed to the com-
missioners the general authority and power to organize
drainage · districts within their county in accordance
with the act, and bestowed upon them the general super-

vision and control of artificial and natural drains. Their duties and powers are in the main administrative, though they have some judicial power. It was said by Chief Justice Cooper, in the case of *Telegraph Co.* v. *Railroad Commission,* 74 Miss. 80, 21 So. 15, that the Mississippi Railroad Commission "is a mere administrative agency, although, in some respects, it exercises *quasi* judicial power." This definition is applicable to the county board of drainage commissioners.

It was not the purpose of the legislature to make the board of commissioners a court in the strict definition of the term; that is, a tribunal established for the public administration of justice and for the hearing and decision of cases. It is true that the board is given certain powers which are judicial, but the chief purpose for the establishment of the board and the larger part of their duties and functions are of an administrative nature. We can well understand that the legislature, in declaring that the county board was a court of record, had for its purpose to provide that the records of the board should be as those of courts of record, wherein the acts and proceedings are recorded for "a perpetual memory and testimony." Black's Law Dictionary. It is surely important in the administration of the business of the board and the general drainage affairs of a county that all proceedings and acts should be made of permanent record.

If we say that the board is a court of record because it has been so denominated in the act, then the establishment of the board is authorized by section 172 of the Mississippi Constitution; for, if a court, then it is an inferior court. It has limited and restricted jurisdiction. Its findings and determinations are not final and conclusive, and are subject to review or correction of a higher court under the very provision of the act for appeal from its orders or decisions to the chancery court.

*Affirmed.*