Hayes *et al. v.* Abney *et al.*

(In Banc. April 17, 1939.)

[188 So. 533. No. 33643.]

ETHRIDGE, J., dissenting.

**O. M. Oates,** of Bay Springs, for appellants.

Joe A. McFarland, Jr., and H. L. Bayless, Jr., both of Bay Springs, for appellees.

**McGowen, J.,** delivered the opinion of the court.

This case arises under Chapter 19, Laws of 1935, Extraordinary Session, known as the Corrupt Practices Act.

A municipal primary election was held in the Town of Bay Springs for the election of officers thereof. Hayes was a candidate for mayor, as was Abney, incumbent, a candidate for reelection; and Windham, a candidate for marshal, with several opponents; it being the first Democratic primary election held on October 28, 1938.

On the face of the returns, Abney was declared elected by the election officers who made returns thereof to the constituted authorities, and the same result was declared by the municipal executive committee. Thereafter, in due time, Hayes and Windham, unsuccessful candidates, filed their contest of the elections as to the offices of mayor and marshall. The said committee dismissed contestant's petition.

The contestants, proceeding under the terms of the Act, took the necessary step to obtain a judicial review of the election; and a circuit judge of another district, together with the then municipal election commissioners, set up as advisers, on a day named, heard the contest as a special court or tribunal upon appearance of parties' pleadings and proof, entered its final judgment, signed by the judge and all of the commissioners, holding the election valid and dismissing the contest.

From the judgment of that tribunal, appeal is prosecuted directly to this Court by the contestants, as permitted under Section 15, subsection (d) of the Act.

Before considering the merits of the election contest, two questions properly raised by members of this Court must be determined. These questions are raised by the members of this Court touching its jurisdiction, and it is proper so to do under the case of Drummond v. State, Miss., 185 So. 207, and the authorities there cited.

These questions as to the jurisdiction of this Court are: (1) is the special tribunal from whose judgment

this appeal, created by Section 15 of the Corrupt Practices Act, is taken, such an inferior court as may be established under Section 172, Constitution of 1890; and (2) may an appeal be taken from the judgment of the special tribunal so created direct to the Supreme Court?

Both of these questions have been so thoroughly considered by this Court, that without again entering discussion thereof, they are now answered in the affirmative.

The functions of this special tribunal are judicial in character, even more than a drainage district, and is an inferior court within and authorized by Section 172, Constitution of 1890. See Pegram v. West Hatchie & Owl Creek Drainage District, 108 Miss. 793, 67 So. 453, This case was cited with approval in Knox v. Speakes, 144 Miss. 125, 109 So. 129, in which case the constitutional bar was finally let down.

As to an appeal direct to this Court from the judgment here, see Drummond v. State, 185 So. 207. The opinions in that case, main, concurring and dissenting, show that the conclusion reached has been maturely and well nigh exhaustively considered and finally determined. This conclusion is upon our own decisions, putting aside the argument that the Legislature, in subjecting primary elections to judicial review, has by this Act created a right which did not theretofore exist, and having so done created for its enforcement an inferior court or tribunal with its jurisdiction, practice and procedure outlined.

In limine, the judgment of the special tribunal, hereinafter designated the lower court, with such facts as is found contained therein, is of course a part of this record. In addition, there is a bill of exceptions amplifying the facts regularly signed and certified as correct by the circuit judge and filed here as a part of this record. The judgment referred to does state some facts on some points of law. On some points of law, there are mere conclusions of law without finding or synopsis of the facts upon which the conclusion is based. In this state

of this record, we shall treat the bill of exceptions as a part of the record before us. This view is strengthened by the fact that appellees have not objected thereto nor moved to strike the bill of exceptions therefrom. The bill of exceptions is only supplemental to the finding of facts recited in the judgment. See Section 15, subsection (d). Since all the facts material to the points are not in the judgment, and since all the material facts may be presented on appeal by such bill of exceptions, it follows that when the court while sitting failed to include all the facts in its finding or not sufficiently in detail, then such deficiency may be supplied by a bill of exceptions as was done here.

At this point, we add that we make no original finding of fact. We accept the facts as found by the special tribunal, and the supplemental undisputed facts as facts, certified by the trial judge in the special bill of exceptions.

Section 22 of the Corrupt Practices Act provides "All the provisions of this act as far as practicable shall apply to and regulate primary elections for the nomination of elective municipal offices."

It was entirely practicable for the municipality of Bay Springs to conform to this statute, for the reason that it was governed by a mayor and board of aldermen. It had a clerk of the board. It had election commissioners, and a municipal executive committee.

The findings of fact by the special tribunal show that four voters whose votes were received and counted were disqualified because they had not made their poll tax payments. It is admitted that this finding was correct. The special tribunal held that H. T. Tedder was a qualified elector. The facts, as shown by the record, are as follows: Tedder was born September 17, 1876. He was permitted to vote as an exemptionist over sixty years of age. He did not pay his toll tax for the year 1936. Under the Act, he was disqualified to vote in this primary election under Section 3(e), as amended by Section 3(a)

of Chapter 320, Laws of 1936. There were only two candidates for mayor, Hayes, contestor, and Abney, contestee. The tally sheet returns made by the election managers showed 107 votes for Abney and 104 for Hayes. The municipal executive committee approved this return as correct. We hold that Tedder was disqualified, making five disqualified votes, which, if deducted from Abney's votes, would show 102 votes for Abney and 104 votes for Hayes. However, the special tribunal recounted the votes and found therein and counted 109 votes for Abney and 104 votes for Hayes. The figures between the two counts can not be reconciled.

But, it may be argued that all of the disqualified votes rejected by the special court and by us, five in number, have been deducted from Abney, who, on the face of the returns, was nominated. The rule is that where enough illegal votes were cast to change the result or leave it in doubt, the election is void. See 20 C. J., 182. The authorities are in conflict as to the burden of proof as to illegal votes found to be cast. Under our secret ballot system, it may be doubted whether any voter, legal or illegal, may be required to reveal, over his protest, how he voted. 20 C. J. 246, 247. In the case at bar, there was no effort to show how any person voted. It will be seen from what we have already stated that the result of this election is in doubt.

We unhesitatingly say that, with but one exception, this election was held in the old fashioned way, without regard to the Corrupt Practices Act. It was ignored. There was a total and radical departure from the procedure it requires and outlines. We point to the statute in one particular. Section 4 of the Act of 1935 provides: "When any person entitled to vote shall appear to vote, he shall first sign his name in a receipt book or booklet provided for that purpose and to be used at that election only and which receipt book or booklet shall be used in lieu of the list of voters who have voted formerly made by the managers or clerks; whereupon and not before,"

an initialed blank ballot may be delivered to the voter. It is admitted that this provision was entirely and completely ignored, but a list of those who were counted as voting in the election was made by someone of the election officers and in defiance of the provision of the Act that the officers of the election should not make up this list. We pause to say that the list so made up, without any single voter receipting for the ballot, did not tally with the votes found in the box by the special tribunal. This was a total fundamental departure from the plain mandate of the statute.

In Guice v. McGehee, 155 Miss. 858, 864, 871, 124 So. 643, 647, 125 So. 433, the Court had under review an election contest in which was involved a construction of former statutes controlling elections, in which the Court called attention to the established public policy and to the mandatory feature therein being discussed and said: "We hold that the statute must be construed as mandatory in all of its substantial requirements; and therefore an exception to the general rule that election laws are construed liberally in favor of the electors." Of course, minor formalities or technical irregularities may be and should be disregarded. On the other hand, to permit a total departure from a statute which was designed to control the election officers and the voters in the manner in which a vote could be cast would in effect declare it a farce. The statute as written is so specific as to be calculated to prevent the managers or others from committing frauds in manipulating elections at particular voting precincts. In other words, the provision as to having the voter sign a receipt for his ballot was a prerequisite to his right to have a ballot and consequently to vote it. This was provided as a means of ascertaining the true and actual will of the electorate who attended the election and voted thereat and to readily detect fraud.

We think this section was outstanding and mandatory for the prevention of fraud, and the preservation of the

purity of the ballot box. When this section is followed, there can be no question as to who actually attended and voted in the particular election. With it ignored, the door is left wide open for frauds and the destructiion of the will of those who actually qualified and voted in the election.

In further support of this view, and in answer to the argument that this provision should be construed to be directory and not mandatory, the following facts may be stated: Since the Constitutional Convention of 1890 in this State, a nomination by the Democratic Party was equivalent to an election. About ten years after that convention, primary elections were recognized by statute and there was practically nothing in them to prevent corruption or evil practices in the conduct of them by election officers and others.

In 1934 and in 1935, the State Democratic Executive Committee recommended and demanded that a statute be enacted by the Legislature to correct certain fixed and growing evils in the conduct of the party primaries. The Governor of the State, by his message in 1935, pointed out instances of frauds in elections and advocated the enactment of a law to prevent them. In other words, to prevent the managers and others from "stuffing the ballot box." A law that would prevent the managers from making out votes for persons who did not attend the election, and counting them in their returns; a law that would prevent one voter from exercising the right of suffrage in the names of others several times on the same election day.

We are of opinion that this statute was enacted, and the part to which we have called attention was intended and designed to be enforced so as to prevent these evils. This statute closed the gate to the above mentioned evils, and perhaps others unnecessary to ennumerate, by providing means of ready detection. An elector who signs the list himself could not come into court and say that he was not present at the election, neither could the

managers successfully write his name on the list if he were not present and not voting. In other words, this list was a check upon concealment of fraud thought to be commonly practiced in the holding of primary elections in this State; and unless we say that the Legislature had no intention to cure these evils, then one by one, as the features of this statute, revolutionary in its character in this State, are presented to this Court, they may be held to be directory and the entire statute rendered nugatory and ineffectual. We confidently say that in this particular the statute is mandatory, and in the case at bar there was a total departure therefrom. There are other features of the Corrupt Practices Act designed to prevent frauds in elections, and to prevent election officers by fraud or manipulations from substituting their will for the will of the qualified electors of the State.

The curative feature, so called, of the Corrupt Practices Act, is invoked here, and it is said under it, this provision and others should not be held to be mandatory. The language relied on is as follows: ''That this act may be cited as the Mississippi corrupt practices act of 1935, and its provisions shall receive an ordinary and reasonable construction in order to accomplish its purposes rather than a strict and illiberal construction.'' Section 1. We are of opinion that this simply means, when properly construed and interpreted, that irregularities only should not void elections. The dominant purposes of the Act were to prevent the practice of frauds in primary elections. If we construe the provisions of the Corrupt Practices Act as being directory, then we destroy it and put an illiberal construction on the statute and thereby defeat its manifest, outstanding, and unmistakable purpose.

But, if we say that this provision is curative, it can only be held analogous to our jury laws. Section 2064, Code of 1930, recites that all the provisions of the jury statutes are directory. Yet, this Court has held that where there is a total departure from the statutory re-

quirement that such total departure rendered the trial void. See Rhodman v. State, 153 Miss. 15, 120 So. 201; Morrison v. State, 155 Miss. 323, 124 So. 362; Ellis v. State, 142 Miss. 468, 107 So. 757; Lee v. State, 138 Miss. 474, 103 So. 233. The principle we have applied is precisely analogous—that an election is illegal and void when the officers thereof make a list of those voting in a primary election in a manner demonstrating a total departure from the statute which specifies how this book instead of the list is to be made. Take the Lee case, for instance, the list put in the jury box was not made by the board of supervisors as such, but was made by individuals, and we held that the trial was voided because the jury was secured from a jury box so tainted.

To sum up, we are holding that a total departure from the fundamental provisions of the Corrupt Practices Act, by those who hold the election, renders it void; and the voter and not the election officers should sign the list in the booklet provided by law, that he is not entitled to a ballot nor to vote a ballot until this section has been complied with, that this feature is mandatory in order to accomplish the purposes of the statute, and if totally departed from as in the case at bar, the election will be held to be void. There must be a substantial compliance with this provision of the law, which, if, by construction, we now eliminate therefrom by holding it directory, will emasculate the Act so as to restore the opportunity for the continuance of those evils in elections, which the governing authorities of the State, the Democratic Party, and the legislative branch thought should be mandatorily prohibited by law.

Other features are clearly mandatory and must be substantially observed, but the one we have here under consideration is the keystone of the arch.

We are of opinion that the pretended primary election here being considered was no election at all, and was of no more legal effect than a mass meeting or a "straw vote." The judgment of the special tribunal is reversed

and judgment rendered here that this primary election was illegal and void.

Reversed and judgment here

**Ethridge, J.**, delivered a dissenting opinion.

I think the Court is without jurisdiction to overturn the decision of the tribunal below, and to enter upon a separate finding of facts from the evidence, contrary to the decision of the court below. In order to test the constitutionality of an act, we must consider not only what has been done under the act, but what may be done under it.

Under paragraph (d) of section 15, chapter 19, Laws of 1935, Ex. Sess., known as the Corrupt Practices Act, it is contemplated that this Court will, if there is not unanimous concurrence on the facts in the special court, examine the question as one of original jurisdiction, and find the facts in accordance with is own conception of the evidence. This question was not in the case of Drummond v. State, Miss., 185 So. 207, 214. Of course, the Drummond case forecloses the question decided, and I confine this dissent to this point.

In its decisions, this Court has repeatedly held that it will not decide issues of fact which the court below has not decided—that such questions constitute original jurisdiction. See Robertson v. So. Bitulithic Co., et al., 129 Miss. 453, 92 So. 580; White v. State, 159 Miss. 207, 131 So. 96; Yazoo & M. V. R. Co. v. Wallace, 90 Miss., 609, 43 So. 469, 122 Am. St. Rep. 321; Planters' Ins. Co. v. Cramer, et al., 47 Miss. 200; Brown v. Carraway, 47 Miss. 668; Peirce v. Halsell, 90 Miss. 171, 43 So. 83; Berry v. Brown, 109 Miss. 64, 67 So. 662; Brown v. Sutton, 158 Miss. 78, 121 So. 835; Moore, et al. v. White, 161 Miss. 390, 137 So. 99; McKee v. Hogan, 145 Miss. 767, 111 So. 357; Wynne v. Illinois C. R. Co., 108 Miss. 376, 66 So. 410; Wynne v. Illinois C. R. Co., 105 Miss. 786, 66 So. 410.

In all other respects than those stated above, I rely

upon my dissenting opinion in Drummond v. State, Miss., 185 So. 214, et seq.

I am convinced that untold mischief will result from converting this Court from its original purpose as a reviewer of decisions of the Circuit and Chancery Courts, to an appellate court for petty tribunals, having special and limited jurisdiction; and upsetting the prior practice of this Court in only exercising revisory powers on the judgments from the court below on matters of law, and not on matters of fact. This Court is not equipped to perform such duties. To confer appellate jurisdiction over inferior tribunals upon this Court, by construction, is bound to result unfavorably to the administration of justice.