BLAKENEY *v.* MAYFIELD

No. 40071 December 5, 1955 83 So. 2d 749

January 9, 1956 84 So. 2d 427

*Barnett, Jones & Montgomery,* Jackson, for appellant.

*Gore & Gore,* Jackson, for appellee.

LEE, J.

This litigation arose out of a runoff between Ance Blakeney and Ellis Mayfield in the Democratic primary

of August 23, 1955, for the office of Supervisor of District No. 2 of Smith County.

There are five voting precincts in the district, namely, Center Ridge, Old Taylorsville, Summerland, Union and Taylorsville. According to the returns of the managers, Blakeney received 701 votes and Mayfield 695. On a count by the executive committee, the result was 705 for Blakeney and 704 for Mayfield. Mayfield then obtained the right to examine the boxes and thereupon filed a contest, claiming that he had received 705 votes and Blakeney 703. The executive committee heard the contest, and it found that in the Union precinct where Blakeney received 71 votes and Mayfield 93, and in the Taylorsville precinct, where Blakeney received 380 votes and Mayfield 448, none of the voters signed their names in the receipt books, as provided by law. In other words, of the total of 1409 votes cast in the election, 992, or all of those cast in the Union and Taylorsville precincts, were illegal. The committee therefore rescinded its former action in declaring Blakeney the nominee, and ordered another primary election to be held in those two precincts on September 21, 1955.

On September 17, 1955, Blakeney filed his petition for a judicial review under the Corrupt Practices Act. His contention therein was that he had received a majority of the legal votes, and that the committee had erred in cancelling its previous order, which had declared him the nominee; that besides, Mayfield had promised certain electors that, if they would vote for him, he would give them work on the roads or other rewards, in case of his election; that these promises were in violation of Section 3173, Code of 1942; and that because of such violations, Mayfield had forfeited his right to nomination to the office under Section 3193, Code of 1942. He prayed for a stay of the election, which had been ordered by the committee, until a hearing had been had; and a

stay of the election was in fact granted by a Justice of this Court.

The special tribunal, contemplated by Sections 3182, 3183 and 3184, Code of 1942, was composed of Chancellor Stokes V. Robertson, Jr. of the Fifth Chancery Court District and the three county election commissioners of Smith County.

At the conclusion of the hearing of the cause on October 10, 1955, the special court held that "all of the ballots cast in the Union and Taylorsville precincts * * * are void and must be rejected and cannot be counted, and that the total vote * * * at said two precincts of 1002 votes and that the total vote in said election for supervisor * * * was approximately 1410 votes, and * * * that the will of the qualified voters has not been expressed and is not expressed in the remaining votes * * *", and it was thereupon ordered that a new primary should be held in all of the precincts on October 13, 1955, and managers, clerks and baliffs were appointed. The court further held that it was without jurisdiction in regard to the amended cross complaint of Blakeney with reference to the specific violations of Section 3173, supra, as charged, or to consider the alleged disqualification of Mayfield thereby. The three election commissioners concurred in the finding of fact, as dictated into the record, by the presiding judge. The final judgment granted an appeal to Blakeney upon his giving a good and sufficient bond of $300, as provided by Section 3185, Code of 1942, and also granted a stay of the election, pending the hearing of the cause in this Court.

The sole question here is whether or not the special court erred in ruling that it had no jurisdiction to determine whether Mayfield had violated the provisions of the Corrupt Practices Act by promising jobs, or other rewards, in violation of Section 3173, Code of 1942, and

was thereby disqualified as a candidate under Section 3193, Code of 1942.

Section 3173, supra, is as follows: "No person, whether an officer or not, shall, in order to promote his own candidacy, or that of any other person, to be a nominee for public office in any primary in this State, directly or indirectly, himself or through another person, promise to appoint, or promise to secure or assist in securing the appointment, nomination or election of another person to any public position or employment, or to secure or assist in securing any public contract or the employment of any person under any public contractor, or to secure or assist in securing the expenditure of any public funds in the personal behalf of any particular person or group of persons except that the candidate may publicly announce what is his choice or purpose in relation to an election in which he may be called on to take part if elected. And it shall be unlawful for any person to directly or indirectly solicit or receive any promise by this section prohibited. But this does not apply to a sheriff, chancery clerk, circuit clerk, or any other person, of the State or county when it comes to their office force."

The applicable part of Section 3193, supra, is as follows: "(a) Any candidate, or any other person who shall wilfully and deliberately violate the provisions and prohibitions of Sections 10 and 11 and 14 of this Act (Secs. 3172, 3173, 3180 and 3181, supra) shall be guilty of the crime to be known as corrupt practice in primaries, and upon indictment and conviction therefor and thereof shall be punished by a fine in a sum not to exceed five hundred dollars or imprisonment in the county jail not to exceed one year, or by both fine and imprisonment. And when such violations have been wilfully and deliberately done by a candidate, or who has wilfully and knowingly permitted said violations to be done in his behalf, by and through a persistent course

of conduct throughout the territory or any substantial part thereof wherein his candidacy is or was concerned, he shall forfeit his nomination, or if elected at the following general election by virtue of said nomination, his election shall be void."

It is seen that violations of the sections, as mentioned above, may subject the offending candidate to a criminal prosecution, and, in certain instances, to the forfeiture of his nomination, or in voiding his election, in case he is successful. But none of those contingencies existed here. This was no criminal prosecution. Neither was there a nomination or an election. Conceding, but not deciding, that a political party may, because of flagrant violations of the statute, withdraw from the offending candidate the right to run for office under its banner, still that question does not arise here inasmuch as the executive committee did not attempt to effect a disqualification.

Under the terms of the Corrupt Practices Act, it was declared that "its provisions shall receive an ordinary and reasonable construction in order to accomplish its purposes rather than a strict and illiberal construction * * *. Section 3158, Code of 1942. And in Hayes v. Abney, 186 Miss. 208, 188 So. 533, it was held that the requirement that a voter shall sign a receipt for his ballot was enacted "as a means of ascertaining the true and actual will of the electorate who attended the election and voted thereat and to readily detect fraud."

A similar question as to the authority of a special court, set up under the Corrupt Practices Act, to inquire into the qualification or disqualification of candidates in primary elections was raised in the case of McKenzie v. Thompson, 186 Miss. 524, 191 So. 487. In that case, McKenzie contested the nomination of Thompson on the Democratic ticket for the office of sheriff on the ground that Thompson was not a qualified elector of the county, but the executive committee declared Thomp-

son as the nominee. A special court, organized under the Corrupt Practices Act, confirmed Thompson as such nominee. On appeal, this Court said: ''The only question is whether McKenzie was entitled to contest Thompson's nomination upon the ground alone that he was not a qualified elector of the county. Thompson's position is that his qualifications for the office are not involved in a proceeding of this character. We so hold and reach that conclusion upon the following considerations: The special tribunal set up by the Corrupt Practices Act has no authority to go beyond ascertaining the will of the qualified electors participating in the party primary. To that end, it has the authority and duty to determine whether those voting or offering to vote are qualified electors and entitled to vote, and whether in all substantial respects the election was fairly and honestly held in compliance with the various provisions of the law. Hayes v. Abney (Miss.), 188 So. 533.

''We think by analogy this question is governed by the principles applicable to contests between candidates in a general election. It is a public question, not a private one. The only remedy is after the general election in the nature of a quo warranto under Section 3053, Code of 1930, which provides for such a remedy in the name of the state against any person who unlawfully holds or exercises the functions of a public office. May v. Young, 164 Miss. 35, 143 So. 703; Omar v. West (Miss.), 188 So. 917.''

In other words that case held that the special tribunal had no authority to pass on or determine that Thompson, on the ground that he was not a qualified elector, was disqualified from holding the office of sheriff, and, for that reason, could not be the nominee for that office.

By the same token, neither did the special tribunal in this case have the authority to determine that Mayfield, because of the alleged violations of the Corrupt Practices Act, as set out in the contest, was dis-

qualified from holding the office of supervisor, and for that reason could not run in the Democratic primary and perhaps become the nominee for that office.

Appellants cite a number of authorities from other jurisdictions, but those cases are worth very little since our Court has already established a precedent on the governing principle here involved.

The judgment of the special tribunal is affirmed; and this action also disposes favorably of the appellee's motion to dismiss the appeal.

█ █ But inasmuch as the special court improvidently granted a stay of the special primary election which it ordered, and no nominee of the Democratic party was selected, and the general election on the first Tuesday after the first Monday of November 1955, being the eighth day thereof, has already been held, it follows that a special election must be called and held as provided by Section 3187, Code of 1942. See Walker v. Smith, 213 Miss. 255, 56 So. 2d 84.

Affirmed, and special election ordered.

*Hall, Kyle, Arrington* and *Ethridge,* JJ., Concur.

### ON SUGGESTIONS OF ERROR

ETHRIDGE, J.

Both Blakeney and Mayfield have filed suggestions of error. They contend that we erred in holding that, since the general election of November 8, 1955, had already been held, a special election must be called and held as provided by Code of 1942, Section 3187; that the cause should have been remanded to the special tribunal with instructions to set a new date for the holding of a new primary election; and that thereafter a special election could be called by the Governor, upon the ballots for which the successful Democratic nominee could be so indicated.

▆▆ ▆ Code Section 3167 authorizes the party executive committee to order the holding of another primary election, where there has been a contest, and in proper cases this can be done by the executive committee, the special tribunal or this Court, provided a new primary can be held prior to but not after the date of the general election, so that the party nominee's name can be placed on the general election ballots. This conclusion is made manifest by Section 3187 which provides for an expeditious judicial review, and rendition of final judgment, if possible, in time to enable the party nominee's name to be placed upon the general election ballots. Section 3187 further provides: "When no final decision has been made in time as herein above specified, the name of the nominee declared by the party executive committee shall be printed on the official ballots as the party nominee, but the contest or complaint shall not thereby be dismissed but the cause shall nevertheless proceed to final judgment and if the said judgment be in favor of the contestant, the election of the contestee shall thereby be vacated and the Governor, or the Lieutenant Governor in case the Governor be a party to the contest, shall call a special election for the office or offices involved, if the contestee has already entered upon the term he shall vacate the office upon the qualification of the person elected at said special election, and may be removed by quo warranto if he fail so to do." In other words, where a party primary cannot be held within time to enable the nominee's name to be placed upon the general election ballots in November, Section 3187 expressly states that the Governor shall call a special election for the office involved. The phrase "special election" is clearly intended to mean a special election in the usual sense of that term, and not a party primary. ▆▆▆ Nor does this statute contemplate a party primary after the general election, and before the calling of a special election, at least as to state, district and county offices.

 █ Sinclair v. Fortenberry, 213 Miss. 219, 56 So. 2d 697 (1952) involved a primary election contest for the office of supervisor. The special tribunal ordered the calling of a special primary election in one of the four precincts in the district on November 14, 1951, which was after the date of the November general elections. This Court reversed that judgment and ordered a special election. It was said that: "It was too late to hold a special primary election . . . and a special election should have been ordered to be held in the entire district in the manner provided in Section 3187 . . ." Sinclair v. Fortenberry is controlling on the issue raised in the suggestions of error. It and other cases have interpreted Section 3187 contrary to the contentions made in the briefs. Smith v. Deere, 195 Miss. 502, 508, 16 So. 2d 33 (1943) holds that, if the general election has already taken place, Section 3187 requires the Governor to call a special election for the office involved. To the same effect is May v. Layton, 213 Miss. 129, 56 So. 2d 89 (1952).

Both Harris v. Stewart, 187 Miss. 489, 193 So. 339 (1940) and Briggs v. Gautier, 195 Miss. 472, 15 So. 2d 209 (1943) involved situations where another primary election could be called before the November general election. Chinn v. Cousins, 201 Miss. 1, 27 So. 2d 882 (1946) is not controlling here. It deals with municipal elections, which are not subject to the constitutional limitations of Mississippi Constitution Sections 102 and 252, and which constitute a separate statutory election system.

Suggestions of error of Appellant Blakeney and of Appellee and Cross-Appellant Mayfield overruled.

*Hall, Lee, Kyle* and *Arrington,* JJ., Concur.