# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-EC-01677-SCT

*TASHA DILLON*

*v.*

*DAVID MYERS*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/08/2015 |
| TRIAL JUDGE: | HON. JAMES D. BELL |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PIETER JOHN TEEUWISSEN |
| | ANTHONY RENARD SIMON |
| ATTORNEYS FOR APPELLEE: | BRANDON CURRIE JONES |
| | DAVID WAYNE BARIA |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | REVERSED AND REMANDED - 04/06/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Tasha Dillon contested the results of the August 4, 2015, Democratic primary for Mississippi House of Representatives ("House") District 98.[1] The Democratic primary's purpose was to determine the party's candidate or nominee in the November general election. The Pike County Circuit Court dismissed the case for lack of subject-matter jurisdiction.

---

[1]Dillon alleged numerous election-code violations by the Pike County Election Commission, the circuit clerk, and her opponent, David Myers. The allegations included improper election-day activities, improperly programmed voting machines, insufficient equipment, confusion of ballots in split precincts, and mishandling of both absentee and affidavit ballots.

Dillon appealed. As the circuit court erred in finding it lacked jurisdiction, we reverse and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2.     Tasha Dillon and David Myers were candidates in the Democratic primary for House District 98, held in Walthall and Pike Counties. The Pike County Election Commission ("PCEC") certified Myers as the winner by a vote of 2,003 to 1,859. On August 24, Dillon filed a petition of contest with the Mississippi Democratic Executive Committee ("MDEC") and filed an amended petition on September 1. Two days later, Dillon petitioned the Pike County Circuit Court for judicial review, as provided in Mississippi Code Section 23-15-927.

¶3.     In the circuit-court proceeding, the Pike County Board of Election Commissioners and the Pike County Circuit Clerk ("Election Officials") moved to intervene. The Election Officials moved to dismiss for lack of subject-matter jurisdiction. Myers filed a separate motion to dismiss for lack of subject-matter jurisdiction. Following a hearing on the motions, the Pike County Circuit Court dismissed the contest for lack of subject-matter jurisdiction, reasoning that Article 4, Section 38 of the Mississippi Constitution and Section 23-15-955 of the Mississippi Code controlled, but acknowledging the existence of conflicting caselaw on the issue. Dillon appealed.

## ISSUES

¶4.     Dillon raises two issues on appeal, which have been restated for clarity:

    I.     Whether the trial court erred in dismissing for lack of subject-matter jurisdiction.

II.     Whether the trial court erred in allowing the Election Officials to
        intervene.

## ANALYSIS

**I.     Whether the trial court erred in dismissing for lack of subject-matter jurisdiction.**

¶5.     This Court reviews questions of law, including jurisdictional questions, *de novo*.

***McDaniel v. Cochran***, 158 So. 3d 992, 995 (Miss. 2014); ***McCain Builders, Inc. v. Rescue***

***Rooter, LLC***, 797 So. 2d 952, 954 (Miss. 2001).

¶6.     Dillon argues the circuit court had jurisdiction pursuant to Mississippi Code Section

23-15-927.[2] Myers argues the House had exclusive jurisdiction pursuant to Section 38 of the

Mississippi Constitution.[3] Caselaw arguably supports both positions.

_____

[2]Section 23-15-927 provides, in pertinent part:

> When and after any contest has been filed with the . . . State Executive
> Committee, and the executive committee having jurisdiction fails to promptly
> meet . . . the contestant shall have the right forthwith to file in the circuit court
> of the county in which the irregularities are charged to have occurred . . . a
> sworn copy of his protest or complaint, together with a sworn petition, setting
> forth with particularity how the executive committee has wrongfully failed to
> act or to fully and promptly investigate . . . with a prayer for a judicial review
> thereof. A petition for judicial review must be filed within ten (10) days after
> any contest or complaint has been filed with an executive committee.

Miss. Code Ann. § 23-15-927 (Rev. 2015).

[3]Miss. Const. art. 4, § 38 ("Each house shall . . . judge of the qualifications, return and
election of its own members."). This provision of the Mississippi Constitution has been
codified as follows:

> Except as otherwise provided by Section 23-15-961, the person contesting the
> seat of any member of the Senate or House of Representatives shall comply
> with the provisions of this section. Section 38, Mississippi Constitution of
> 1890, provides that each house of the Mississippi State Legislature shall judge

3

¶7. In the 2003 Republican Primary for House District 56, Jep Barbour was certified the winner over his opponent, Phillip Gunn. ***Barbour v. Gunn***, 890 So. 2d 843, 844 (Miss. 2004). Gunn filed a contest with the State Republican Executive Committee. ***Id.*** When the executive committee failed to act promptly, Gunn sought judicial review. ***Id.*** The Circuit Court of Hinds County ordered a new election in two precincts. ***Id.*** Barbour appealed, arguing the circuit court lacked jurisdiction because Gunn had not given the executive committee time to act. ***Id.*** at 846. This Court held

> that the trial court properly found that it had jurisdiction to proceed in this matter. Miss. Code Ann. § 23–15–927 plainly states that an election "contestant shall have the right forthwith to file in the circuit court of the county wherein the irregularities are charged to have occurred," if the "executive committee having jurisdiction shall fail to promptly meet or having met shall fail or unreasonably delay to fully act upon the contest or complaint, or shall fail to give with reasonable promptness the full relief required by the facts and the law."

***Id.*** at 847. ***Barbour*** supports Dillon's argument.

---

> the qualifications, return and election of its membership. Pursuant to that authority, the House of Representatives shall have exclusive jurisdiction over an election contest regarding the seat of any member of the House of Representatives, and the Senate shall have exclusive jurisdiction over an election contest regarding the seat of any member of the Senate. An election contest regarding the seat of a member of the House of Representatives or the Senate shall be filed with the Clerk of the House or the Secretary of the Senate, as the case may be, within thirty (30) days after a regular general election or ten (10) days after a special election to fill a vacancy. The legislative resolution of the election contest shall be conducted in accordance with procedures and precedents established by the House of Representatives or the Senate, as the case may be.

Miss. Code Ann. § 23-15-955 (Rev. 2015). Section 23-15-961 provides for judicial review of one challenging the qualifications of a party in a primary election. *See* Miss. Code Ann. § 23-15-961 (Rev. 2015).

¶8. Conversely, Myers argues the jurisdictional exclusivity of Section 38 of the Mississippi Constitution controls and was neither raised nor argued by either Barbour or Gunn. Indeed, this Court previously has held that Section 38 applies to primary election contests for the Mississippi Legislature (albeit without addressing Section 247 of the Constitution, which specifically addresses party primary elections). *See Foster v. Harden*, 536 So. 2d 905 (Miss. 1988); *Henry v. Henderson*, 697 So. 2d 447 (Miss. 1997).

¶9. In *Foster*, two candidates were certified for a runoff election in the Democratic primary for Senate District 28. *Foster*, 536 So. 2d at 906. Foster was not certified and filed a petition with the executive committee challenging the qualifications of the candidates certified to run in the primary runoff. *Id.* When the committee denied her petition, Foster sought judicial review. *Id.* Harden filed a motion to dismiss for lack of subject-matter jurisdiction pursuant to Section 38 of the Mississippi Constitution. *Id.* When the trial court dismissed, Foster appealed. *Id.* This Court found Section 38 "provides in unambiguous language that each house of the legislature 'shall judge of the qualifications, return and election of its own members.'" *Id.* The Court held Section 38 vests exclusive jurisdiction in the Legislature, and thus the Judiciary was without authority to hear the case. *Id.* at 907.

¶10. The *Foster* dissent, however, charged the Court with "dep[a]rt[ing] from precedent barely a year old and from a premise fundamental in our law," opining that the Court previously had held that, in an primary election, "residency qualifications of a candidate are proper subject matter for a special tribunal in an election contest hearing." *Id.* at 907-08 (Zuccaro, J., dissenting) (citing *Gadd v. Thompson*, 517 So. 2d 576 (Miss. 1987)). Indeed,

5

*Gadd* affirmed judicial review of a candidate's qualifications following the Democratic primary election for House District 13. *Gadd*, 517 So. 2d at 577-79.

¶11.    While *Foster* involved a qualification issue following a primary election, jurisdiction of a primary election contest was addressed in *Henry*. Henry and Henderson were candidates in the Democratic primary for House District 26. *Henry*, 697 So. 2d at 448. Henry challenged the election, first through the executive committee and then through the circuit court. *Id.* The circuit court granted Henderson's motion to dismiss for lack of jurisdiction based on *Foster* and Section 38 of the Mississippi Constitution. *Id.* On appeal, Henry argued that Section 38 applied only to qualifications and competence of legislators and not to election contests; therefore *Foster* should not apply. *Id.* at 450. The Court rejected this argument. *Id.* at 451 ("The Constitution gives authority to each house to judge the return and election of its own members. Return and election includes the proper number of votes cast for each candidate. Therefore, as in *Foster*, the lower court would be without jurisdiction.").

¶12.    We are tasked today with reconciling these competing lines of cases with our Constitution. We thus turn our attention first to the supreme law of this State, the Mississippi Constitution of 1890, comparing Section 38 ("Each house shall elect its own officers, and shall judge of the qualifications, return and election of its own members.")[4] and Section 247 ("The Legislature shall enact laws to secure fairness in party primary elections, conventions, or other methods of naming party candidates.").[5] These sections were adopted at the same

---

[4]Miss. Const. art. 4, § 38.

[5]Miss. Const. art. 12, § 247.

6

time.[6] In exercise of the Constitutional mandate of Section 247, the Legislature subsequently enacted Section 23-15-927, providing for judicial review of primary election contests. The Legislature likewise codified its authority to decide contests involving its own members, but only following a general or special election. *See* Miss. Code Ann. § 23-15-955. Notably, Section 23-15-955 requires challenges to legislative seats to be filed thirty days after a general election or ten days after a special election. Conspicuously absent from that code section is any mention of primary elections, which the Legislature separately addressed in Section 23-15-927. We find the absence of any reference to a primary election in Section 23-15-955 and the specific reference to general/specific elections in Section 23-15-955, along with the specific inclusion of primary election contests in Section 23-15-927, evinces the Legislature's recognition of the distinction we declare today. The election at issue *sub judice* specifically concerns a party primary election, which brings this case squarely within the purview of the more specific Section 247—wherein the people directed the Legislature to enact laws to secure fairness in party primary elections. The adoption of Sections 23-15-955 and 23-15-927 is clear support for the distinction and validates our holdings prior to **Henry** and **Foster**.[7]

---

[6]We are asked today to determine whether a circuit court has subject-matter jurisdiction to hear a particular case, which requires an analysis of our Constitution and election statutes. Although neither party directs this Court to Section 247, an analysis of that section is necessary, for the statute at issue was breathed into existence by the authority of that section.

[7]Further validation is found in the adoption of internal House Rule 104(B). *See* n.9 *infra*.

¶13.    The ***Henry*** and ***Foster*** Courts failed to address the interplay between Sections 38 and 247. Prevailing in a primary election creates no right to demand of the Legislature a seat.[8] Prevailing in a primary election creates no right to challenge another who has taken a seat. A primary election does not transform a candidate or nominee of a party into a member of the House or Senate. Prevailing in a primary merely makes one the official party candidate or nominee certified to run in the general election. Members of the Legislature are elected in general (or special) elections, not primaries; hence the Constitution granted the Legislature the right to hear legislative election contests following a general (or special) election.

¶14.    The primary election at issue in this case did not result in any person securing the right to claim the office as a member of the House of Representatives, District 98. The primary election at issue in this case did not result in any person becoming a member of the Legislature. It was not a general election. The primary election determined only the Democratic nominee for the general election. Only the subsequent general election could result in one acquiring the right to become a member of the Legislature. The dissent conflates the principles governing general elections with those governing primaries. We agree that Section 38 places judging the election of members of the Legislature in the Legislature's bailiwick, but legislative members are elected in general (or special) elections.

¶15.    In order to restore harmony to our Constitution and election laws, we reaffirm the Legislature's exclusive jurisdiction, pursuant to Section 38 of the Mississippi Constitution,

---

[8]Even in an uncontested general election, a candidate may be removed from consideration by death, resignation, withdrawal, or other reason. *See* Miss. Code Ann. §§ 23-15-363; 23-15-365 (Rev. 2015).

to hear election contests involving a seat in the Mississippi Legislature following a general or special election. However, the jurisdiction bestowed on the Legislature by Section 38 does not apply to a *primary* election for a legislative office, for the same Constitution, in Section 247, requires the Legislature to enact laws to secure fairness in primary elections.[9] Pursuant to that mandate, the Legislature first granted the parties' executive committees jurisdiction to resolve primary election contests. If a contestant is dissatisfied with the timeliness or final decision of the executive committee, the Legislature endowed the judicial branch with full jurisdiction to review *all* primary election contests.[10] Thus, the circuit court erred in finding it lacked subject-matter jurisdiction in the case *sub judice*.

¶16.    As this opinion reveals, resolution of this issue has a checkered past. The prior opinions failed to address Section 247 of our Constitution, *vis a vis* Section 38.[11] In so doing, we have denied citizens, like Dillon, the right to contest a primary election, codified by the Legislature as directed by the Constitution. Thus the holdings in **Foster** and **Henry** have had

---

[9]Not only did the Legislature enact statutes governing primary election contests, pursuant to Section 247, we take judicial notice of the adoption of House Rule 104B ("The procedure for handling the contest of the election, other than a primary election, of a member of the Mississippi House of Representatives shall be as follows: (1) Anyone desiring to contest the election, other than a primary election . . . .") as evidence of the Legislature's intent to commit review of primary election contests to the Judiciary. While the dissent does not discern the line drawn between primary and general elections (*see* Dis. Op. at ¶ 25), the line was drawn by the drafters of our Constitution, not by us.

[10]Miss. Code Ann. §§ 23-15-927 (providing for judicial review of party primary elections); 23-15-961 (providing for judicial review of challenges to candidate qualifications in a primary election).

[11]*See, e.g.,* **Foster v. Harden**, 536 So. 2d 905 (Miss. 1988); **Henry v. Henderson**, 697 So. 2d 447 (Miss. 1997).

a "substantial adverse or significantly harmful effect upon the people." ***State ex. rel. Moore v. Molpus***, 578 So. 2d 624, 635 (Miss. 1991). To the extent any of our prior cases are contradictory to this opinion, they are expressly overruled.[12]

## II.    Whether the trial court erred in allowing the Election Officials to intervene.

¶17.    Section 23-15-931 governs procedures for judicial review of an election contest.

> [T]he circuit clerk shall issue subpoenas for witnesses . . . and he shall also issue a summons to each of the five (5) election commissioners of the county . . . requiring them to attend the hearing, throughout which the commissioners shall sit with the judge as advisors or assistants in the trial and determination of the facts, and as assistants in counts, calculations and inspections, and in seeing to it that ballots, papers, documents, books and the like are diligently secured against misplacement, alteration, concealment or loss both in the sessions and during recesses or adjournments. The judge is, however, the controlling judge both of the facts and the law, and has all the power in every respect of a circuit judge in termtime. The tribunal shall be attended by the sheriff, and clerk, each with sufficient deputies, and by a court reporter. . . . The special tribunal, after the contest or complaint has been fully heard anew, shall make a finding dictated to the reporter covering all controverted material issues of fact, together with any dissents of any commissioner, and thereupon, the trial judge shall enter the judgment which the county executive committee should have entered, of which the election commissioners shall take judicial notice, or if the matter be one within the jurisdiction of the State Executive Committee, the judgment shall be certified and promptly forwarded to the Secretary of the State Executive Committee, and, in the absence of an appeal, it shall be the duty of the State Executive Committee forthwith to reassemble and revise any decision theretofore made by it so as to conform to the judicial judgment[.]

Miss. Code Ann. § 23-15-931 (Rev. 2015).

¶18.    Dillon argues that because the Election Officials have statutorily prescribed duties, intervention was improper. The Election Officials counter that the Rules of Civil Procedure

___

[12]"One accepted ground for judicial overruling of a demonstrably erroneous prior constitutional interpretation is that, across the years, it has produced great and sustained harm; . . . if it is clearly . . . hurtful." ***Molpus***, 578 So. 2d at 635.

permit intervention by anyone "when an applicant's claim or defense and the main action have a question of law or fact in common." M.R.C.P. 24(b)(2). Because Dillon alleges numerous election-code violations by the Election Officials, they argue their claims and defenses and Dillon's main action have a question of law or fact in common.

¶19. Rule 24 notwithstanding, Rule 81 provides that the Rules of Civil Procedure "are subject to limited applicability" in actions "generally governed by statutory procedures," including "proceedings pertaining to election contests." M.R.C.P. 81(a)(4). Section 23-15-931 prescribes duties for the circuit clerk and the election commissioners during judicial review of an election contest. The circuit clerk is a mandatory participant, as are the election commissioners, who serve as advisors and assistants to the trial judge. Therefore, it was error to allow the Election Officials to intervene as parties when the statute mandates contrary duties.

## CONCLUSION

¶20. When Section 38 and Section 247 of the Mississippi Constitution are read together, the Constitution vests the Legislature with exclusive jurisdiction to hear legislative election contests following general (or special) elections. But that jurisdiction does not extend to primary election contests. In exercising the mandate of Section 247 to enact laws to secure fairness in party primaries, the Legislature granted the Judiciary jurisdiction to hear all primary election contests. Therefore, the circuit court erred in dismissing this case for lack of subject-matter jurisdiction. Also, because intervention is inconsistent with the Election Officials' statutory duties during judicial review of an election contest, permitting their

11

intervention was error. The judgment of the Pike County Circuit Court is reversed and the case is remanded for further proceedings consistent with this opinion.

¶21.   **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON, P.J., KITCHENS, KING, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**COLEMAN, JUSTICE, DISSENTING:**

¶22.   I wholly agree with the majority in one respect. "We are tasked today with reconciling [these] competing lines of cases with our Constitution." (Maj. Op. at ¶ 12). However, because I am of the opinion that Section 38 mandates by its language that disputes regarding election to either house of our Legislature, no matter when they may arise during the elective process, be decided in the appropriate house, I respectfully dissent.

¶23.   Article 4, Section 38 of the Mississippi Constitution of 1890 provides, "Each house shall elect its own officers, and shall judge of the qualifications, return and election of its own members." In twelve of its twenty words lies the answer to today's case. "Each house . . . shall judge . . . the . . . return and election of its own members."

¶24.   The majority holds that the broader Section 247, which by its terms applies to all party elections, conventions, and methods of naming party candidates governs, but I believe it does so in the first place based upon a misinterpretation of the words "of its own members" in Section 38 and, in the second place, in disregard of the principle of construction that directs us to give effect to a narrow provision of law over a broader one, and, in the third instance, in violation of the doctrine of *stare decisis*.

12

¶25.    The majority writes, "A primary election does not transform a candidate or nominee of a party into a member of the House or Senate." (Maj. Op. at ¶ 13). The majority reasons that, because winning a party primary makes a candidate the candidate only for a party, or, if one will, a candidate at a higher level, it takes the candidate outside of the parameters of Section 247. I do not discern within the text of our Constitution the line drawn by the majority between the primary and the general election for purposes of electing members of the Legislature. The whole process is part of electing members of the Legislature, and Section 38 explicitly places judging the election of members of the Legislature in the Legislature's bailiwick. In light of the straightforward wording of Section 38, there exists no real difference between the different stages of the election process, and I fear that the majority today adds words to the Constitution to reach its result.

¶26.    By the above-quoted language and the language that follows it, the majority suggests that Section 38 limits itself to contests wherein an incumbent member is a party to the contest. However, Section 38 applies to both the *return* and the *election* of its own members. If Section 38 applied only to the return of its members, I would agree with the majority, but the drafters' inclusion of the words "and election" significantly broadens its impact.

¶27.    I further base my difference of opinion with the majority on the principle of construction that "[t]o the extent that two constitutional or statutory provisions overlap or conflict, specific provisions control over general provisions." *Harrison v. State*, 800 So. 2d 1134, 1137 (¶ 14) (Miss. 2001) (citing *Yarbrough v. Camphor*, 645 So. 2d 867, 872 (Miss. 1994) (citing *McCrory v. State*, 210 So. 2d 877, 877–78 (Miss. 1968); *Lenoir v. Madison*

13

*County*, 641 So. 2d 1124, 1128 (Miss. 1994))). Section 38 applies only to legislative elections, but Section 247 applies to *all* party elections, conventions, and other methods for electing party candidates for any and every elected office in the state in which candidates run with party affiliation. As the narrower provision, Section 38 controls.

¶28. Pursuant to the foregoing reasoning, I would hold that the cases rejected by the majority including *Foster v. Harden*, 536 So. 2d 905, 907 (Miss. 1988), and *Henry v. Henderson*, 697 So. 2d 447 (Miss. 1997), were correctly decided and provide the correct guidance for all legislative election contests. In *Foster*, which involved a contest that occurred at the primary level, the Court wrote, "Section 38 vests competence of Harden's qualifications for office--including whether she meets the residency qualifications--in the Senate. Accordingly, there is no authority in the judiciary to hear this case. The court below correctly dismissed for lack of subject matter jurisdiction." *Harden*, 536 So. 2d at 907. The *Harden* Court also wrote as follows:

> Section 38 of the Constitution provides in unambiguous language that each house of the legislature "shall judge of the qualifications, return and election of its own members." The almost universal constitutional doctrine in the United States and the several states which have constitutions containing this or similar provisions is that:
>
>> Each legislative body is the sole judge of the elections, returns, and qualifications of its own members, and its action in admitting or expelling a member is not reviewable in the courts. Furthermore, a statute which requires a court to inquire into the commission of corrupt practices in the election of a member of the legislature is not constitutional.
>
> 16 C.J.S., *Constitutional Law* § 201 (1984).

*Harden*, 536 So. 2d at 906. The *Harden* Court continued,

14

The point is advanced that whether Harden meets the residency requirement of Section 42 is a question of law, competence of which is necessarily committed to the judiciary. We are not concerned with the nature of the substantive question presented but with locating the legal power to decide it. That we have before us a question of law cannot be doubted for Section 42 is a rule of law. Still, it does not follow that the question may be considered only in the courts. Judicial competence may not extend to questions of law, decision of which is constitutionally placed somewhere else, for "there is no natural law of separation of powers. Rather, the powers of government are separate only insofar as the Constitution makes them separate." **Dye v. State, ex rel. Hale**, 507 So. 2d 332, 346 (Miss. 1987).

Section 38 vests competence of Harden's qualifications for office – including whether she meets the residency qualifications – in the Senate. Accordingly, there is no authority in the judiciary to hear this case. The court below correctly dismissed for lack of subject matter jurisdiction.

**Harden**, 536 So. 2d at 906-907.

¶29.   Indeed, as the majority acknowledges, in **Barbour v. Gunn**, 890 So. 2d 843 (Miss. 2004), Section 38 was neither raised nor argued. (Maj. Op. at ¶ 8). Therefore, as a third and final ground for my disagreement with the majority, in addition to the language of Section 38 and the principle of applying specific provisions over general ones, I rely on the principle of *stare decisis* and close by pointing out that the **Foster** and **Henry** Courts already have provided the result the Court should be following in the case *sub judice*. The issue before us already has been decided, and the majority identifies no compelling reason to stray from our earlier pronouncements on the matter.

15